# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

LORRAINE M. RAMOS, et al.,

      *Plaintiffs,*

v.

BANNER HEALTH, at al.,

      *Defendants.*

Case No.: 1:15-cv-02556 — W J M — M J W

Honorable William J. Martinez

Magistrate Judge Michael J. Watanabe

( Docket No. 31-1 )

## STIPULATION AND ORDER FOR DISCOVERY OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

### I.  General

A.  The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.  To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with the Local Rules, the Federal Rules of Civil Procedure and any orders by this Court.

- 1 -

84671959.1

1.      Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.

2.      This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Local Rules, the Federal Rules of Civil Procedure and the Court's orders, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

3.      Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to the Agreed Protective Order on Confidentiality entered by the Court on February 2, 2016 ("Protective Order"), all documents that are responsive to discovery requests, are reasonably accessible, and that meet the proportionality factors set forth in FRCP 26, shall be produced in the manner provided herein. Nothing in this Stipulation and Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to object to, or to seek relief from the production of certain electronically stored information, or to move to compel, on the ground that the sources are not reasonably accessible because of undue burden or cost, or on the ground that there is good cause for the documents' production.

4.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation. To the extent compliance

-2-

with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5.      Consistent with their obligations, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.     Production Format – Hard Copy

Hard copy documents that have not been scanned by the producing party may be made available for copying and inspection or be produced as an exact hard copy.  At the producing party's election, or if hard copy documents have already been scanned by the producing party, hard copy documents will be scanned and produced as single-page, black and white, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file shall contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES," "CUSTODIAN," "CONFIDENTIALITY DESIGNATION," and "REDACTION REASON." In scanning hard copy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized). The Producing Party agrees to provide OCR text for scanned images of hard copy documents if the documents have not already been scanned for purposes other than production. OCR is to be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds.  In the

- 3 -

case of an organized compilation of separate documents –for example, a binder containing several separate documents behind numbered tabs– the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in the metadata fields.

**III.    Production Format – Electronically Stored Information ("ESI")**

Except as otherwise noted herein or agreed on by the parties, and notwithstanding any format provisions in a Party's discovery requests, ESI will generally be produced in conformance with the specifications detailed in Appendix A.  ESI shall be produced in native format, except for ESI requiring redaction, which shall be produced in tiff + metadata format as specified in this Stipulation and attached Appendix A.  All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Appendix A and captured at the time of the collection.  Any Party, in addition to producing ESI in native format, may produce ESI in a TIFF + metadata format as specified in Appendix A.

**IV.    Production Format –Proprietary Databases**

To the extent discoverable electronic information is contained in a proprietary database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data or the creation of a report. Given the Parties' preference for native productions, all exports of data or reports will be produced in native format (csv file, excel file, or other agreed format).

**V.    Production Format - Media**

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, through secure file transfer protocols (e.g., SFTP), or similar secure electronic

transmission as agreed to by the parties.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.  Any document production that may contain "non-public personal information" or confidential health information (as defined in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R, and/or other applicable state or federal law or regulation concerning confidential health information) shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable.  If a Producing Party encrypts or "locks" the production, the Producing Party shall simultaneously send, under separate cover, an explanation of how to decrypt the files.

**VI.   Processing Specifications**

A.   <u>Redactions</u>: No redactions will be made to responsive documents except to redact privileged or otherwise protected information, or personally identifiable information related to plan participants in Advisory Committee meeting minutes or related materials.  If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting that information, the Parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the Parties will seek resolution from the Court.

B.   <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a Central Standard (or Daylight) Time Zone for all data.

C.   Deduplication: A Party is only required to produce a single copy of a responsive document and a Party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians.  For e-mails with attachments, the hash value shall be generated based on the parent-child document grouping.  Deduplication shall not break apart families.  However, metadata identifying all custodians in possession of each document that is removed as a duplicate must be produced in the "CUSTODIAN" or "DUPLICATE CUSTODIAN" or Duplicate Folder/Path field in the production load file subject to any exceptions provided in Appendix A.

**VII.   Identification and Collection of Documents**

A.   Except at otherwise agreed upon in this Stipulation, the Parties will continue to meet and confer in an effort to agree upon the following but by no later than March, 2016 shall reach agreement or impasse on the following:

1.   List of key custodians;

2.   Search methodology to be applied, including, but not limited to, any search parameters, search terms, and date restrictions, if necessary;

3.   Location of relevant data sources including custodial and non-custodial sources. This includes identifying both accessible and claimed inaccessible sources, and, storage facilities.

B.   Search Methodology:

1.   Email and Non-Email: the Parties agree to search for and produce responsive records from sources of hard copy and ESI to the extent such locations may contain responsive information as outlined in Section VII.C.

2.    Determinations of discoverability and responsiveness shall be made by the Producing Party.

C.    <u>Location of Hard Copy and ESI</u>: To the extent the following sources are identified by the custodian or other persons with potentially relevant information as containing potentially responsive hard copy or ESI, the Producing Party will search the following sources:

1.    Custodians' hard copy files;

2.    Custodians' local hard drives;

3.    Custodians' mobile devices, to the extent such devices are within the possession, custody, or control of the producing party;

4.    Custodian's personal email accounts and computers;

5.    Custodians' personal network drive;

6.    Custodians' reasonably accessible corporate email accounts;

7.    A custodians' removable or portable media (including, but not limited to, thumb or flash drives, external hard drives, CDs or DVD)s;

8.    Cloud drives or offsite electronic storage of documents;

9.    Hard copy documents stored off-site;

10.    Network drives or active server directories (i.e., shared drives);

11.    Databases;

12.    Shared email accounts; and

13.    Other sources later identified.

### VIII.  Preservation

A.    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B.    The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery.  Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible.  The Parties agree that the following ESI is not reasonably accessible:

1.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

2.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.    On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4.    Data stored on photocopiers, scanners and fax machines.

5.    Data in metadata fields that are frequently updated automatically, such as last-opened dates.

6.    Server, system or network logs.

7.     Electronic data (e.g., email, calendars, contact data, and notes) that exist only on a mobile device (e.g., iPhone, iPad, Android, and Blackberry devices) that is neither synched to nor retrievable from another source or device, provided that such electronic data is routinely saved elsewhere (e.g., on a server, laptop, desktop computer, or "cloud" storage) that the Producing Party believes, after necessary interviews, does not contain relevant or responsive information

C.     However, nothing herein shall prevent a Party from subsequently requesting that ESI identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval. Further, nothing herein shall prevent a Party from requesting and receiving additional detail and explanation from the Producing Party regarding any of the above items that would allow the requesting Party to further evaluate the substance of the information and the burden and costs of retrieving and providing this information. In addition, the Parties agree to continue to meet and confer regarding identification, preservation, and production with regard to specific data systems.

IX.   **Privilege and Privilege Logs**

A.     The Parties agree that the following documents need not be included on a privilege log:

1.     Communications between a Party and its trial counsel on and after the filing of this lawsuit.

2.     Internal communications within a law firm on and after the filing of this lawsuit.

3.    Any communications from a Party to any law firm retained by it, following the filing of this lawsuit.

4.    Internal communications involving legal advice between a Party and the Party's in-house counsel, following the filing of this lawsuit.

5.    Any communications regarding litigation holds or preservation, collection, or review in direct connection with this lawsuit.

B.    The Parties agree that for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, and not otherwise exempted under Section A or any Rules or Local Rules, the Producing Party shall prepare a privilege log and provide a copy of same, within 15 days of the corresponding production, in compliance with FRCP 26(b)(5) containing, for each document claimed as privileged, the following information:

1.  BEGNO

2.  ENDNO

3.  ALL CUSTODIANS

4.  DATE

5.  AUTHOR

6.  TO

7.  CC

8.  BCC

9.  PRIVILEGE CLAIM ASSERTED (ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT)

10. SUFFICIENT DESCRIPTION OF THE DOCUMENT OR
COMMUNICATION AT ISSUE THAT WILL ALLOW THE OTHER
PARTY TO ASSESS THE CLAIM OF PRIVILEGE

For the author and all recipients of the redacted or withheld communications, the Producing Party shall also identify their capacities, positions or work titles or otherwise provide sufficient information that will allow the Parties to assess the claim and any potential waiver of privilege or protection.

C.      If the Requesting Party requires further information for any withheld communication under Section A, it shall explain in writing the need for such information. Within five (5) days of such a request, the Producing Party must either (i) provide the requested information or (ii) deny the request. If a Party denies a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

**X.      Good Faith**

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party cannot comply with any material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fifteen (15) days after so learning. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

Dated: February 24, 2016

SO ORDERED:

MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE
DISTRICT OF COLORADO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

LORRAINE M. RAMOS, et al.,

       *Plaintiffs,*

v.

BANNER HEALTH, at al.,

       *Defendants.*

Case No.: 1:15-cv-02556 — WJM – MJW

Honorable William J. Martinez

Magistrate Judge Michael J. Watanabe

## APPENDIX A to

## ESI STIPULATION AND ORDER

**I.    Production Format**

    A.    Hard Copy Documents: Documents retained in hard copy form may be made available for copying and inspection or scanned and produced in single page black and white TIFF image format with applicable objective coding fields below.  Scanned TIFF images shall be produced with a delimited load file that includes the page-document relationship and Bates number and page count and OCR'd text, as well as any other information specified in Parts B, C and D below, and in the manner specified in Parts B, C and D below (as applicable.)  If a produced TIFF image is unreadable or appears to be otherwise missing information, the requesting party may notify the producing party who will reproduce the document or portion of the document if the original document is not similarly obscured.  The Parties will discuss reasonable requests for production of color or oversized documents on a document-by-document or category-by-category basis.

- 1 -

84671990.1

B.      Electronically Stored Information (ESI):  Except as otherwise noted herein or by agreement of the parties, ESI, aside from documents requiring redaction for privilege, will be produced in native electronic format. ESI requiring redaction will be produced as single-page, black and white, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., .dat).  ESI requiring redactions will be provided with OCR text performed after applicable redactions are applied to the produced image.  The Parties will discuss reasonable requests for production of color or oversized documents on a document-by-document or category-by-category basis. Parties, in addition to producing ESI in native format, may produce ESI in TIFF + metadata format as specified in this Appendix A.

Native Files will be produced together with a relative file path to the Native File provided in the metadata load file.  The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form to the extent that metadata exists or is reasonably accessible or available for any files produced.  If a Producing Party wishes to designate a Native File "Confidential," it shall do so by producing the Native File on media that is labeled "Confidential" or by branding the placeholder TIFF image "Confidential."

C.      Bates Numbering: Each page of a tiff produced document will have a legible, unique identifier ("Bates number") assigned and electronically "burned" onto the image.  The identifier shall include an alpha prefix along with a fixed number, i.e., ABC000001. This format must remain consistent across all production numbers and be placed on the lower right corner of all images so as not to unreasonably obliterate or obscure any information.  No other legend or stamp will be placed on a document image other than confidentiality legends (where applicable) or redactions.

D.   <u>Associated Delimited Text File and Metadata Fields</u>: A database load file shall be provided in the Concordance ".dat" file format that holds metadata in fields as a delimited text load file. For the load file, the Parties should use Concordance standard delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). To the extent captured at the time of the collection and processing, the fielded data should include all the metadata fields listed below for a file/document in addition to the unitization (including the production number of the first and last page of each document) and attachments (including information sufficient to identify the parent and child relationships of all documents that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document. Load files shall include the metadata fields listed below, or substantially identical metadata fields, to the extent already in existence and reasonably accessible. A producing party may produce additional fields, but shall provide definitional information regarding such field(s) values no later than the time of delivery of any production containing such fields. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Stipulation shall require any Party to extract, capture, collect generate or produce such data. However, the Parties will use reasonable efforts to collect and process ESI in such a manner as to capture the metadata fields required by this Stipulation.

**Hard Copy**

| FIELD NAME | FIELD DESCRIPTION |
|------------|-------------------|
| BEGBATES | Beginning production number or Bates |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| | number for a given file/document |
| ENDBATES | Ending production number or Bates number for a given file/document |
| BegAttach | |
| EndAttach | |
| PAGECOUNT | Number of pages for the document |
| TEXT | Relative path to OCR text file |
| Confidentiality | Confidentiality Designation |
| Redaction | Redaction Reason |
| Custodian | Custodian or Source |

**ESI**

| FIELD NAME | SAMPLE DATA | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|---|
| BEGBATES | ABC000001 | Beginning production number or Bates number for a given file/document | E-mail and E-Doc |
| ENDBATES | ABC000002 | Ending production number or Bates number for a given file/document | E-mail and E-Doc |
| BEGATTACH | ABC000001 | Beginning production number or Bates number for the attachment range | E-mail and E-Doc |
| ENDATTACH | ABC000015 | Ending production number or Bates number for the attachment range | E-mail and E-Doc |
| PARENT_BATES | ABC000001 | First Bates number of parent document/e-mail | E-mail and E-Doc |

- 4 -

| | | | |
|---|---|---|---|
| | | **This PARENT_BATES field should be populated in each record representing an attachment "child" document. | |
| CHILD_BATES | ABC000002;<br><br>ABC000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document. | E-mail and E-Doc |
| CUSTODIAN | Smith, John | Person, shared file or other source from whom files were collected | E-mail and E-Doc |
| DUPLICATE CUSTODIAN | Brown, Julie; Black, Joe | To identify other custodians whose files contained a particular document that was eliminated through de-duplication to the extent not included in the CUSTODIAN field | E-mail and E-Doc |
| DUPLICATE PATH/FOLDER | \\server name\s hare\Fo lder02 | To identify other paths or folder locations of files from a particular document that was eliminated through de-duplication to the extent not included in the PATH field. | E-Mail and E-Doc |
| SUBJECT | Meeting Minutes | Subject line extracted from e-mail message | E-mail |
| FROM | Thompson, Frank | Sender | E-mail |
| TO | Coffman, Janice; Lee, William | Recipient | E-mail |
| CC | Cain, John | Copyee | E-mail |
| BCC | Stevens, Hunter | Blind Copyee | E-mail |
| DATESENT | 10/12/2012 | Sent date of an email message in the following format:<br><br>MM/DD/YYYY | E-mail |

| TIMESENT | 07:05 PM | Time the email was sent, with timezone normalized across all produced records | E-mail |
|---|---|---|---|
| DATERCVD | 10/12/2012 | Date an email message was received in the following format:<br><br>MM/DD/YYYY | E-mail |
| TIMERCVD | 07:05 PM | Time the email was received, with timezone normalized across all produced records | E-mail |
| AUTHOR* | Smith, John | Name of person who created document or email<br><br>Parties acknowledge that the Author field may not actually be the Author of the document. | E-Doc |
| FILENAME | October Agenda.doc | Original file name of native document | E-Doc |
| PATH | C:\My Documents\Agenda | Original path for documents (if this information has been captured) | E-mail and E-Doc |
| DATECREATED* | 10/1/2011 | Date document was created<br><br>Parties acknowledge that the Date Created field may not actually be the Date Created due to the ease of change to that field and the technical definition of the field (e.g., the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location) | E-Doc |

| TIMECREATED* | 9:18 AM | Time document was created<br><br>Parties acknowledge that the Time Created field may not actually be the Time Created due to the ease of change to that field and the technical definition of the field (e.g., the created time reflects the time when the file was created in that particular location on the computer or on the other storage device location) | E-Doc |
|---|---|---|---|
| DATELASTMOD | 10/15/2011 | Date the document was last modified in MM/DD/YYYY format | E-Doc |
| TIMELASTMOD | 11:07 AM | Time file was last modified, with timezone normalized across all produced records | E-Doc |
| FILEEXT | Msg | File extension of native document | E-mail and E-Doc |
| PAGECOUNT | 16 | Number of pages for the document | E-mail and E-Doc |
| HASH | d131dd02c5e6eec5694 d0698aff85c2fsch5876 217eab40045733b8fb7 89 | MD5 or SHA1 Hash Value | E-mail and E-Doc |
| NATIVEFILE PATH | D:\001\ABC000005.xls | Original path or hyperlink to documents being produced in native file format | Native |
| TEXT | Relative path to extracted text or OCR for the document | OCR or extracted text file | E-mail and E-Doc |
| Redaction | Privilege | Reason for Redaction on a Document | All |

     E.    <u>Databases:</u>  The Parties may produce responsive ESI present in databases in the

manner in which such ESI is extracted (or in which reports are run) in the ordinary course of

business.  Upon request, the Parties shall cooperate to produce responsive ESI from any such

database in another reasonably useable production format.