**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.  1:15-cv-02556-WJM-MJW**

LORRAINE M. RAMOS, ET AL.,

               PLAINTIFFS,

v.

BANNER HEALTH, ET AL.,

               DEFENDANTS.

---

**JEFFREY SLOCUM & ASSOCIATES, INC.'S RULE 12(b)(6) MOTION TO DISMISS**
**COUNTS I AND II OF THE AMENDED COMPLAINT [DKT. 118]**

---

Defendant Jeffrey Slocum & Associates, Inc. ("Slocum") respectfully submits this Rule 12(b)(6) Motion to Dismiss Counts I and II the Amended Complaint.[1]

## INTRODUCTION

Nearly a year after bringing this action, plaintiffs filed the Amended Complaint adding Slocum as a defendant in their challenge to the Banner Health Defendants' management of the Banner Health 401(k) Plan ("Plan").  Am. Compl. ("AC") ¶ 1.  Like its predecessor, the Amended Complaint sets forth plaintiffs' perspective on how retirement plans should be managed today and seeks to apply it retrospectively to the Plan, which evolved (along with fiduciary practices generally) over the alleged eight-year class period.  Missing, however, are any well-pled factual allegations plausibly showing that Slocum—a firm Banner Health hired to

---

[1]   Pursuant to the Court's Practice Standards, on February 1, 2017, counsel for both parties conferred regarding this Motion.  Based on their discussion, counsel agreed the Motion cannot be avoided by way of stipulated amendment to the Amended Complaint.

provide *limited* investment advice to the Banner Health fiduciary committee that was responsible for selecting and monitoring the Plan's investments and service providers—breached any ERISA fiduciary duty in connection with the specific services it provided.  Accordingly, the claims against Slocum in Counts I and II should be dismissed.[2]

In Count I, plaintiffs claim the *Banner Health Defendants* breached their ERISA fiduciary duties by "fail[ing] to engage in a prudent and loyal process for the selection and retention of the Plan's" recordkeeper, Fidelity, and by allowing Fidelity to receive "unreasonable compensation" for its services.  AC ¶ 122.  While acknowledging that Slocum was *not responsible* for hiring Fidelity or negotiating or controlling its fees, plaintiffs nevertheless seek to hold Slocum liable for "fail[ing] to engage in a prudent and loyal process to ensure" Fidelity's compensation was "reasonable."  AC ¶ 123.  However, despite having thousands of discovery documents reflecting Slocum's advice to the Banner Health Defendants over the past eight years, *see* Dkt. 113 at 3; Dkt. 70 at 9, plaintiffs offer no factual allegations describing the supposedly unlawful "process" Slocum employed.  Indeed, while the Amended Complaint contains 19 paragraphs dedicated to the claims in Count I, just four mention Slocum.  Of those four, the first two allege that Slocum *provided advice plaintiffs admit was prudent*, the third alleges innocuous investment advice, and the fourth egregiously mischaracterizes a report in which Slocum candidly assessed the Plan's fees and suggested ways the Committee might further reduce them.  In short, plaintiffs' allegations do not just fail to establish a reasonable inference that Slocum breached any alleged fiduciary duty, they *foreclose it*.

---

[2]   Counts III through V are directed at the various Banner Health defendants, not Slocum.

In Count II, plaintiffs allege that "the Banner Health Defendants, as advised by Slocum, have provided and now provide as Plan investment options mutual funds with excessively high expenses and poor historical performance relative to other investment options[.]"  AC ¶ 132. This claim fails, first, because Slocum was not responsible for monitoring the vast majority of investments plaintiffs challenge. Moreover, the allegations directed at the funds Slocum *was* responsible for monitoring are conclusory and fail under Circuit-court precedents.

For these reasons, discussed further below, the Court should dismiss Counts I and II.

## FACTUAL BACKGROUND

### I.     The Plan, Its Investments, and the Banner Health Fiduciary Committee.

Banner Health offers employees the opportunity to save for retirement through the Plan, a "defined contribution plan" under ERISA.  AC ¶¶ 7-10.  Plan participants could choose to invest their contributions among eight "core" funds and a suite of Fidelity (and later JPMorgan) "target date" funds.  AC ¶ 81 (chart listing the current core and target-date options); Ex. A, Banner Health Ann. 401(k)/403(b) Plan Review, at 4 (listing current and former investment lineup).  For participants seeking more options, until 2014, the Plan offered a mutual fund window comprised of hundreds of additional mutual funds.  Ex. A at 4.[3]  After the mutual fund window was

---

[3]    Plaintiffs repeatedly assert that, until 2014, the Plan offered over "over 400 options," but omit that all but the 8 core funds and target date funds comprised the *mutual fund window*.  *See, e.g.*, AC ¶¶ 2, 83(b).  Documents referenced in the Amended Complaint—including Exhibits A and B hereto, referenced in AC ¶¶ 78, 30, respectively—confirm the mutual fund window was distinct from the Plan's core lineup and target date funds.  Ex. A at 4; Ex. B, 2011 Statement of Fiduciary Duties & Procedures & Investment Objectives & Policies (referred to herein and in the Amended Complaint as the "IPS"), at 5-6.  *See, e.g.*, *Walden v. Metro. Life Ins. Co. of Am., Inc.*, 75 F. Supp. 3d 1320, 1322-23 & n.2 (D. Colo. 2014) (courts may consider documents referenced in the pleadings when ruling on a motion to dismiss).

removed in 2014, participants were still able to access thousands of mutual funds through the Plan's "brokerage window."  AC ¶ 83(b); Ex. A. at 4.

The Plan designates the Advisory Committee ("Committee") as the Plan Administrator and investment fiduciary.  AC ¶ 29.  The Committee, comprised exclusively of Banner Health employees, was responsible for, *inter alia*, selecting, evaluating, and if necessary removing the Plan's investment options and its recordkeeper and trustee, Fidelity.  AC ¶¶ 30, 32, 36; Ex. B at 4-5 (distinguishing between the core investment funds, or "Investment Funds," and the funds comprising the mutual fund window and brokerage window).  Under the Plan's IPS, the Committee was "not responsible" for selecting or monitoring funds comprising the mutual fund window or brokerage window, because the "primary objective" of the "windows [was] to allow participants access to investments not currently available through the core investment options in the Plan."  Ex. B at 5; *see also* AC ¶ 30 (incorporating by reference the IPS).

## II.     Banner Health Retained Slocum to Monitor the Plan's Core Investment Options, Not the Funds Comprising the Mutual Fund Window or Brokerage Window.

Banner Health retained Slocum to provide investment advice concerning the company's own investments, a defined benefit plan, and the Plan.  AC ¶ 37.  As relevant here, Slocum was responsible for (1) providing written performance evaluations of the Plan's core "Investment Funds" selected by the Committee, but not those comprising the mutual fund or brokerage windows; and (2) advising the Committee in selecting new core or target date funds.  *See* AC ¶ 37; Ex. B at 6-7.  Slocum agreed it was a fiduciary with respect to the advisory services it provided.  AC ¶ 38; Ex. B at 6.  However, Slocum had no fiduciary discretion or authority to select or remove Plan investments.  Nor was it responsible for selecting or replacing the Plan's recordkeeper.  Those responsibilities belonged to the Committee.  AC ¶¶ 29-32; Ex. B at 3-6.

## APPLICABLE LEGAL STANDARDS

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcrof v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint must offer more than "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  In evaluating a complaint, courts must disregard "conclusory" allegations because they are "not entitled to the assumption of truth."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180, 1183 n.3 (10th Cir. 2016) ("[T]here is no special rule limiting dismissal of ERISA claims under Rule 12(b)(6).").

To state a claim for breach of fiduciary under ERISA, plaintiffs' well-pled factual allegations must plausibly establish that Slocum failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims."  29 U.S.C. § 1104(a)(1)(B).  The test of prudence is thus the reasonableness of the fiduciary process employed in reaching the challenged decision or, in Slocum's case, rendering the particular advisory services it was hired to provide.  *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 322, 327 (3d Cir. 2011) (affirming dismissal because allegations did not describe the fiduciary process or otherwise establish a reasonable inference that it was illegally flawed); *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 716 (2d Cir. 2013) (the inquiry "'focuses on a fiduciary's conduct in arriving at an investment decision, not on its results'").

5

It bears emphasis here that a defendant may be found liable only with respect to those actions for which he has fiduciary responsibility. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000); *In re Westar Energy, Inc.*, 2005 WL 2403832, at *15 (D. Kan. Sept. 29, 2005) ("The scope of a person's ERISA fiduciary liability . . . is limited by the scope of their fiduciary responsibility."). Thus, it is not enough for plaintiffs to allege the Committee made poor decisions "as advised by Slocum," *e.g.*, AC ¶¶ 123, 132, or that the Committee itself lacked a prudent process, *e.g.*, AC ¶ 122. Rather, plaintiffs must offer well-pled factual allegations from which the Court may reasonably infer that *Slocum* failed to employ a prudent and loyal process in formulating the particular advice it provided. *See, e.g.*, *Renfro*, 671 F.3d at 322; *St. Vincent*, 712 F.3d at 718. The Amended Complaint contains nothing of the sort.

## ARGUMENT

**I.    Plaintiffs' Excessive Administrative Fees Claim against Slocum in Count I Fails.**

In Count I, plaintiffs claim the *Banner Health Defendants* breached their fiduciary duties by allowing Fidelity to derive "unreasonable compensation" through "revenue sharing" payments made by some of the Plan's investment options. AC ¶ 122.[4] As to Slocum, plaintiffs allege it "failed to prudently and loyally monitor the amount of those payments to determine if

---

[4]    Mutual funds charge fees, called "expense ratios," which are expressed as a percentage of an investor's holdings. For example, a participant who invests $1,000 in a mutual fund with an expense ratio of 0.10% (or 10 basis points) would be charged an annual fee of $1 ($1,000 x .001). Some of this revenue covers the fund's administrative costs, such tracking balances and mailing account statements. However, the fund is relieved of such burdens for retirement plan investors, because the plan's recordkeeper fulfills those obligations (and more). Recognizing the value of those services, some mutual funds share a fraction of their expense-ratio revenue with the plan's recordkeeper. Contrary to plaintiffs' insinuations, this "revenue sharing" is common and perfectly lawful. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009) (revenue sharing is common and lawful); *Rosen v. Prudential Retirement Ins. & Annuity Co.*, 2016 WL 7494320, at *10 (D. Conn. Dec. 30, 2016) (same and collecting cases).

they were reasonable." AC ¶ 123. Plaintiffs, however, offer no factual allegations sufficient to plausibly establish this bare legal conclusion.

To begin, the Amended Complaint does not even allege Slocum was responsible for selecting the Plan's recordkeeper or monitoring, negotiating, or otherwise controlling its fees. To the contrary, plaintiffs make clear that the Committee was responsible for "appoint[ing] and monitor[ing]" the Plan's "trustee, custodian, and recordkeeper," and "monitor[ing] the reasonableness of Plan administrative fees." AC ¶ 32; *see* AC ¶ 74 ("the Banner Health Defendants allowed Fidelity to receive uncapped, unreasonable compensation"); AC ¶ 122 (the "Banner Health Defendants" caused Fidelity to receive allegedly "unreasonable compensation"). The allegations concerning Slocum's responsibilities, by contrast, make no mention of "recordkeeping" or "administrative fees." AC ¶¶ 36-38. These omissions undermine plaintiffs' claim from the outset. *See Westar Energy, Inc.*, 2005 WL 2403832, at *15; *Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1018-20 (E.D. Mich. 2014) (dismissing claims because complaint did not establish fiduciary's responsibility over challenged conduct).

What few allegations remain confirm that dismissal is warranted. Among the 19 paragraphs of allegations ostensibly supporting plaintiffs' "excessive recordkeeping and administrative fees" claim, AC ¶¶ 62-80, just four mention Slocum, AC ¶¶ 65-67. And *not one* describes the supposedly unlawful process Slocum employed to monitor the Plan's administrative fees. This omission is particularly problematic considering that in drafting the Amended Complaint plaintiffs had *thousands of documents* reflecting Slocum's advice and the Committee's decisions over the past *eight years*. *See St. Vincent*, 712 F.3d at 713 ("the Amended Complaint 'contains no allegations of adequacy of [defendant's] investigation into the

merits of its investments"); *see also, e.g.*, *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1100 (7th 2015) (the "pleading burden should be commensurate with the amount of information available to" the plaintiff); *Pavone v. Meyerkord Meyerkord, LLC*, 118 F. Supp. 3d 1046, 1055-56 (N.D. Ill. 2015) (same and dismissing complaint on that basis)

Nor do any of the four Slocum paragraphs otherwise support a reasonable inference that Slocum breached any fiduciary duty. *See St. Vincent,* 712 F.3d at 718 (absent allegations "directly address[ing]" fiduciary's process, plaintiffs must offer "factual allegations" from which the court may *reasonably* "infer…the process was flawed") (quotations omitted). In the first two paragraphs, AC ¶¶ 65-66, plaintiffs allege Slocum advised the Committee "it is a fiduciary best practice for Plan fiduciaries to seek competitive bids from service providers every three to five years" and "that a fixed per-participant fee to limit the recordkeeper's compensation for services aligns closest with the recordkeeping cost structure[.]" *But this is advice with which plaintiffs whole-heartedly agree. See* AC ¶¶ 62, 122. Thus, at most, the above allegations show that Slocum provided prudent advice, which the Committee chose not to follow.

Next, plaintiffs allege Slocum "recommended investment options" to the Committee "based, in part," on whether they provided revenue sharing. AC ¶ 67. But far from suggesting imprudence, it is entirely appropriate for an investment adviser to consider whether a potential investment provides revenue sharing to the plan's recordkeeper—especially where, as here, the responsible fiduciary Committee has elected to defray the Plan's administrative costs through revenue sharing rather than charging participants a flat fee. *See, e.g., supra* at 6 n.4. While revenue sharing might have been less relevant under the "flat-fee" structure plaintiffs prefer and

which they admit Slocum suggested, the Committee chose a different approach.  *See* AC ¶¶ 66-67; *see also* Ex. A at 2, 16-23.

Finally, plaintiffs allege Slocum "routinely disregarded its own data on recorkeeping fees paid by [other] clients" and ignored "industry data and appropriate metrics" demonstrating that Fidelity's compensation was "unreasonable."  AC ¶ 78.  The first problem with these allegations is they are wholly conclusory.  Plaintiffs do not identify, for example, what client or industry data and metrics Slocum "ignored" or how the supposed "industry data" should have been obtained or at what cost—much less explain what a "prudent man" in like circumstances would have done differently.  29 U.S.C. § 1104(a)(1)(B).  Particularly given the volume of discovery at plaintiffs' disposal, the above allegations cannot establish a reasonable inference that Slocum breached any fiduciary duty.  *See St. Vincent*, 712 F.3d at 720 ("Armed with . . . extensive data about a fiduciary's [conduct], a prospective plaintiff must show, through reasonable inferences from well-pleaded facts, that the fiduciary's [conduct] did not meet ERISA's requirements.").

Moreover, the allegations are nonsense.  Plaintiffs purportedly base them on a report Slocum prepared and presented to the Committee.  AC ¶ 78.  However, even a cursory review of the report shows that, far from "disregard[ing]" its own client data, Slocum *used that data* to "benchmark" the Plan's administrative fees.  *See* Ex. A at 12-16.  The results, as Slocum candidly reported, showed that "Banner's current administrative costs fall below the average that Slocum observes for clients with similar average balances, but above those based on a per participant cost for the 401(k) plan."  Ex. A at 16.[5]  The report further shows that Slocum used

---

[5]    Plaintiffs' suggestion that the Plan was paying "twice" as much in administrative fees as Slocum's other clients is false.  AC ¶ 78.  While average costs *on a per-participant* basis were

(Footnote Continued)

both client data and industry data to apprise the Committee of "trends" and "best practices" for monitoring administrative fees.  Finally, the report described in detail alternative administrative-fee structures and recommended that the Committee consider them in "determin[ing] the most appropriate [structure] for Banner participants."  *Id.* at 2, 17-23.[6]

In sum, viewed individually or as a whole, plaintiffs' allegations directed at Slocum do not establish more than a "mere possibility" of misconduct.  *Iqbal*, 556 U.S. at 679.  To the contrary, they show that, even assuming Slocum had some fiduciary responsibility to advise the Committee in connection with the Committee's duty to monitor administrative fees, it apprised the Committee of fiduciary "best practices" plaintiffs endorse, benchmarked the Plan's fees using its own client data, and suggested alternative fee structures for the Committee to consider, at its discretion, to control or reduce administrative fees.  Count I should be dismissed.

## II.    Plaintiffs' Imprudent Investment Claims against Slocum in Count II Fail.

In Count II, plaintiffs allege Slocum failed to prudently and loyally advise the Committee in connection with the Committee's duty to select and monitor the Plan's investment options.  AC ¶¶ 132-137.  This claim fails as well.

---

above average, they were not "twice" that of Slocum's other clients.  *See* Ex. A at 16.  Likewise, while the 403(b) plan's fees were lower than the Plan's when divided by total participants, they were *higher* when measured as a percentage of plan assets.  *See* Ex. A at 14-16.  This merely reflects that, while *both plans had the same fee structure*, the 668 participants in the 403(b) plan had far lower average account balances than the 31,871 participants in the Plan.  *See id.*; *Rosen*, 2016 WL 7494320, at *14 ("general allegations regarding the cost of selected investments do not demonstrate . . . that a prudent fiduciary would have [acted] any differently").

[6]    Plaintiffs' incendiary allegation that Slocum tried to conceal the findings of its report, AC ¶ 78, *despite presenting them to the Committee in writing*, is the type of "naked assertion" lacking sufficient "factual enhancement" that must be disregarded.  *Twombly*, 550 U.S. at 557.

**A.      Slocum was Not Responsible for Monitoring the Hundreds of Funds Comprising the Plan's Mutual Fund Window.**

Most of the Amended Complaint is devoted to the alleged "imprudence" of the "hundreds" of mutual funds available through the Plan before 2014. *See, e.g.*, AC ¶¶ 16, 55, 83(b), 91, 102. But these allegations ignore two inconvenient truths: (1) the "hundreds" of mutual funds plaintiffs malign comprised the Plan's mutual fund window, and (2) Slocum had no responsibility to select or monitor the investments in the Plan's mutual fund window. These simple facts almost entirely dismantle the claims directed at Slocum in Count II.

It is black letter law that a defendant may only be held liable under ERISA with respect conduct for which he bears fiduciary responsibility. *See supra* at 6-7. Here, Slocum's fiduciary responsibilities were prescribed in the IPS. AC ¶ 37. And that document makes clear that Slocum was not responsible for advising the Committee with respect to the prudence of the hundreds of funds comprising the mutual fund window. Indeed, the IPS provided that the Committee itself had no responsibility for monitoring the mutual fund window investments. *See supra* at 4. Rather, under the IPS, the Committee was responsible for selecting and monitoring the Plan's eight core funds and target-date funds, which the IPS referred to with the defined term "Investment Funds." *See supra* at 4; Ex. B at 4. Slocum, in turn, was responsible for monitoring the performance of (only) those particular funds and reporting its written findings to the Committee on a quarterly basis. Ex. B at 6-7.

Recognizing their dilemma, plaintiffs seek to obscure the clear limits on the scope of Slocum's responsibility through artful pleading. The Amended Complaint conspicuously omits any direct mention of the mutual fund window, while repeatedly trumpeting that Slocum failed to "analyze the performance and fees for over 98% of the investment options." AC ¶ 83(b). But

this is just spin.  When read alongside the IPS, which plaintiffs themselves allege governed the scope of Slocum's responsibilities, AC ¶ 37, the above allegations merely confirm that the limited scope of Slocum's retention was honored in practice:  Slocum did not monitor "98% of the investment options" available through the Plan because those options comprised the mutual fund window *for which Slocum had no fiduciary responsibility*.

### B.    Plaintiffs Have Not Plausibly Established that Slocum Breached any Duty with Respect to the Funds It was Responsible for Monitoring.

All that is left, then, are plaintiffs' few allegations concerning the supposedly "excessive" expense ratios charged by the Plan's eight core funds and its target date funds.[7] These allegations fail as a matter of law.[8]

---

[7]    The Amended Complaint refers to the eight "core funds" and "target date funds" as the "current" plan lineup as of 2014, but acknowledges that these options were not *new* to the Plan in 2014.  Rather, they are the options that *remained* in the Plan upon the removal of the mutual fund window in 2014.  *See* Ex. A at 4 (noting the removal of the hundreds of funds comprising the mutual fund window in 2014); AC ¶ 83(b) (alleging that in 2014 "the Banner Health Defendants reduce[d] the number of investments options from *over* 400 to 8 core funds, target date funds, and a brokerage window").  This would be clearer were it not for plaintiffs' apparent decision to avoid expressly mentioning the mutual fund window in the Amended Complaint.

[8]    The Amended Complaint contains generic allegations that some of the "hundreds" of funds comprising the mutual fund window "underperformed" unidentified comparators.  AC ¶ 97.  Plaintiffs do not, however, allege that any of the core funds or target date funds underperformed. *See* AC ¶ 102.  The closest they come is their allegation that the Fidelity Managed Income Portfolio ("FMIP") has "some similarities to a stable value fund" but was not "monitor[ed] . . . relative to stable value funds."  AC ¶ 107.  Missing, however, are any allegations reflecting stable-value fund performance over specified periods, how the FMIP performed over the same periods, or even whether the FMIP actually underperformed or by how much.  Thus, even construed broadly, plaintiffs' vague allegations directed at the FMIP—which has only "some similarities" to stable value funds, AC ¶ 107—do not suffice to state a claim.  *See, e.g.*, *St. Vincent*, 712 F.3d at 721(holding that far more detailed underperformance allegations failed to state a claim); *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (three years of losses "is not evidence that [defendant] violated his fiduciary duty"); *White v. Chevron Corp.*, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("Poor performance, standing alone, is not sufficient to create a reasonable inference that [fiduciaries] failed to conduct an adequate investigation").

Plaintiffs' principal allegation is that the "Banner Health Defendants, as advised by Slocum" erred by offering mutual fund share classes in the core investment lineup that were "more expensive" than others.  AC ¶ 83(b).  Some background is helpful.  Many mutual funds are offered in multiple share classes, generally classified as "retail" and "institutional."  Retail share classes, as the name suggests, are widely available to the public and impose modest minimum investment requirements (*e.g.*, $1,000).  Institutional share classes are designed for large institutional investors—including retirement plans—and often impose large minimum investment requirements (*e.g.*, $200 million).  The advantage of institutional share classes is that they charge lower expense ratios than their retail counterparts, and so much ERISA-fee litigation has spawned over plans offering retail rather than institutional share classes.  *See, e.g.*, *Renfro*, 671 F.3d 314; *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Hecker*, 556 F.3d 575.

 Here, plaintiffs *do not* allege that the Plan offered the core funds and target date funds in retail rather than institutional share classes.  Indeed, *all* of the core funds and target date funds plaintiffs attack are institutional investments.  ¶ 83(b).[9]  Plaintiffs nevertheless fault the Banner Health Defendants and, by association, Slocum, on the theory that other *slightly* cheaper institutional options existed.  This is a leap too far.

First of all, plaintiffs once again make no factual allegations whatsoever concerning the *process* Slocum employed to advise the Committee regarding the Plan's core investment lineup.  For example, they do not allege Slocum failed to notify the Committee of the existence of institutional share classes in addition to the ones the Committee selected.  Plaintiffs, likewise, do

---

[9]   All but one of the core funds and target date funds plaintiffs challenge in AC 83(b) are institutional share class mutual funds.  The only exception is the FMIP, *supra* at 12 n.8, which is an institutional investment vehicle known as a collective trust.  *See* AC ¶¶ 83(b), 89, 107.

not take into account whether the alternatives they identify, ¶ 83(b), provided revenue-sharing needed to defray the Plan's administrative expenses. Indeed, plaintiffs do not even allege that the Plan actually *qualified* for the alternatives they identify—and publicly available information confirms that, in at least two instances, it did not.[10]

Regardless, even in cases where plans offer *retail* rather than *institutional* investments, courts reject the notion that a plaintiff states a plausible claim merely by alleging that cheaper options were available. These courts hold that, even assuming lower-cost options could have been offered, where the challenged investments reflect "a reasonable mix and range of investment options" and fees, there are insufficient grounds to support a plausible claim for breach of fiduciary duty. *See, e.g.*, *Renfro*, 671 F.3d at 327-28 (affirming dismissal where challenged funds charged fees ranging from 0.10% to 1.21%); *Loomis*, 658 F.3d at 669-70 (same where challenged funds charged fees ranging from 0.03% to 0.96%); *Hecker*, 556 F.3d at 578 (same where challenged funds charged fees ranging from 0.07% to "just over 1%).

---

[10]   For example, the Plan offers the Fidelity Spartan 500 Index Fund in the Institutional share class (ticker FXSIX), but plaintiffs allege the Advantage Institutional share class (ticker FXAIX) should have been offered instead because its expense ratio was 2 basis points less. AC ¶ 83(b) (chart). *This change would have saved just 20 cents on a $1,000 investment* ($1,000 x .002). Regardless, the Plan had just $188 million invested in the Institutional share class. Ex. C, 2014 Form 5500 excerpt at 2 (listing "SPRTN 500 INDEX INST" holdings), available at www.efast.dol.gov. Thus, it could not have qualified for the Advantage Institutional share class, which has a minimum-investment requirement of *$200 million*. *See* Fidelity Spartan 500 Index Fund Prospectus ("Buying Shares" section), available at http://quote.morningstar.com/fund-filing/Prospectus/2016/4/29/t.aspx?t=FXAIX&ft=485BPOS&d=9e97a92b472e09ad1360f787189c8bda. Similarly, plaintiffs allege the Plan should have offered the Vanguard Small Cap Fund in the fund's Institutional Plus (VSCPX) rather than its Institutional (VSCIX) share class, which would have saved just 2 basis points. AC ¶ 83(b). However, once again, the Plan did not have enough assets invested in the Institutional shares to satisfy the $100 million minimum-investment requirement for Institutional Plus shares. *See* Ex. C at 2 (listing "VANG SM CAP INDX INST" holdings at $79.7 million); Vanguard Small Cap Index Fund Institutional Prospectus at 5, available at https://personal.vanguard.com/pub/Pdf/i857.pdf?2210120738.

That is the precisely the case here.  There are no allegations challenging the sufficiency of the range of options reflected in the core funds and target date funds.  Nor is there any question that the range of fees associated with those options—just 0.04% to 0.72%—compares favorably to the plans approved in the above cases.  Indeed, as Slocum advised the Committee, the fees associated with each of the core funds and target date funds fell within *or below* the Institutional Industry Average range.  *See* Ex. A at 11.

Finally, plaintiffs' allegations that Slocum must have breached a fiduciary duty because the Banner Health Defendants did not include more collective trusts or separate account vehicles in the Plan's core lineup are unavailing.  AC ¶¶ 84-90.  Again, the mere existence of a lower-cost investment fails to state a claim.  *Hecker*, 556 F.3d at 586 ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund[.]").  Further, collective trusts and separate accounts are very different animals than mutual funds, which are by far the most common vehicle offered in 401(k) plans.  Thus, courts have flatly rejected fiduciary-breach claims predicated on the failure to offer collective trusts and separate accounts.  *See, e.g.*, *Loomis*, 658 F.3d at 672 (affirming dismissal and explaining that such vehicles "lack[] the mark-to-market benchmark provided by a retail mutual fund" and thus it "can be hard to tell whether [the vehicles are] doing well or poorly, or whether [their] expenses are excessive in relation to the benefits they provide"); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1134 (9th Cir. 2013) (rejecting identical claim based on the reasoning in *Loomis*).  This Court should do the same.

## CONCLUSION

For the reasons discussed above, Counts I and II of the Amended Complaint should be dismissed with prejudice, as to Slocum.

Dated: February 8, 2017                 Respectfully submitted,

                                          By: */s/ James P. Looby*

                                          Sari M. Alamuddin
                                          Christopher J. Boran
                                          James P. Looby
                                          Emily T. Jastromb
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          77 West Wacker Drive, 5th Floor
                                          Chicago, Illinois  60601
                                          312.324.1000 (phone)
                                          312.324.1001 (fax)
                                          sari.alamuddin@morganlewis.com
                                          christopher.boran@morganlewis.com
                                          james.looby@morganlewis.com
                                          emily.jastromb@morganlewis.com

                                          ATTORNEYS FOR DEFENDANT JEFFREY
                                          SLOCUM & ASSOCIATES, INC.

**CERTIFICATE OF SERVICE**

I, James P. Looby, an attorney, hereby certify that on February 8, 2017, a copy of the foregoing Motion was electronically filed through the Court's CM/ECF filing system, which will transmit notice of such filing to all counsel of record.

*/s/ James P. Looby*
James P. Looby