IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| LORRAINE M. RAMOS, CONSTANCE R. WILLIAMSON, KAREN F. MCLEOD, ROBERT MOFFITT, CHARLENE M. GOODALE, LINDA ANN HERYMAN AND DELRI HANSON, individually and as representatives of a class of plan participants on behalf of the Banner Health Employees 401 (k) Plan,<br><br>Plaintiffs<br><br>v.<br><br>BANNER HEALTH, BANNER HEALTH BOARD OF DIRECTORS, LAREN BATES, WILFORD A. CARDON, RONALD J. CREASMAN, GILBERT DAVILA, WILLIAM F. DWYER, PETER S. FINE, SUSAN B. FOOTE, MICHAEL J. FRICK, MICHAEL GARNREITER, RICHARD N. HALL, BARRY HENDIN, DAVID KIKUMOTO, LARRY S. LAZARUS, STEVEN W. LYNN, ANNE MARIUCCI, MARTIN L. SCHULTZ, MARK N. SKLAR, QUENTIN P. SMITH, JR., CHRISTOPHER VOLK, CHERYL WENZINGER, BANNER HEALTH RETIREMENT PLANS ADVISORY COMMITTEE and JOHN DOES 1-20,                Defendants | CASE NO. 1:15-cv-02556<br><br>Honorable William J. Martinez<br><br>Magistrate Judge Michael J. Watanabe<br><br>**SPECIAL MASTER REPORT NO. 7**<br><br>**Plaintiffs' Motion to Compel Supplementation of Banner Defendants' Discovery Responses** |

    This motion practice deals with the extent to which Defendants should be required to provide additional materials prepared or developed for and/or utilized at certain meetings of the Banner Health Retirement Plans Advisory Committee ("RPAC") and the Banner Investment Committee ("IC").

    It addresses the temporal scope of discovery. Federal courts have considered two approaches. In *United States v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005), the 11th Circuit held that the proper temporal scope ended on the date the plaintiff filed

date the plaintiff filed her complaint. On the other hand, the Court in *Manning v. General Motors*, 247 F.R.D. 646 (D. Kan. 2007 - an employment discrimination case) found that the scope of discovery for a reasonable number of years both prior to and after the "liability period . . . may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence." 247 F.R.D. at 652-653.[1]

Here, Plaintiffs seek full sets of meeting minutes and other materials for Banner's RPAC and IC (2016-2017); quarterly asset balances from the second quarter of 2015 forward; participant count from the second quarter of 2015 forward; and a spreadsheet created and maintained by Michael O'Connor as the result of his 2016 audit of the Banner Health Employees 401(k) Plan. (Reply: 2).

Defendants object on the following grounds: (a) lack of relevance; (b) "Participant-Related Information That Post-Dates the Complaint Should Await the Outcome of this Case" (in other words, bifurcation: "If Plaintiffs succeed at trial and the Court determines that then-current participant information is relevant, the Banner Defendants will produce information the Court requires.") (Response: 6); (c) the requested spreadsheet that considers "administrative errors" that occurred from 2012 forward in the sum of approximately $1.5 million. Defendants respond to this request: "Banner recognized this error and worked diligently to audit the 401(k) and return the overpayments." (Id.) Defendants aver that, because the complaint addresses claims from 2009-2013, and because the ineligible expenses have been returned the Plan, the spreadsheet is not subject to discovery.

The Special Master finds that the question of bifurcation of the trial is not be within the Court's Order of Reference. Therefore, the Special Master limits this review to the following case law concerning bifurcation of discovery.

"Federal Rule of Civil Procedure 42(b) authorizes a district court to bifurcate trial on separate issues in furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition and economy. Whether to try issues separately under Rule 42(b) is within the district court's discretion. The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate trials. The decision to bifurcate is made 'on a case-by-case basis' and is ultimately a practical decision. *Marchese v. Milestone Systems, Inc.*, 2013 WL 12183618 (E.D. Mich. 2013). *See also*: *In re Rail Freight Fuel Surcharge Antitrust Litigation*, 258 F.R.D. 167 (D.C. 2009): "Courts must consider the degree to which the certification evidence is "closely intertwined" with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate. . . .Bifurcated discovery fails to promote judicial economy when it requires "ongoing supervision of discovery." *Id.* If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as "merits" or "certification" discovery. . . . Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into the basic issues of the litigation." 258 F.R.D. at 173-176.

As noted, the Court will decide whether the matter should proceed in one or more phases. At this time, the Special Master recommends that the Court not bifurcate discovery prior to trial, subject to the parties' right to file any motion(s) concerning bifurcation of the case.

With respect to the remainder of the motion, the Special Master is unclear about Defendant's presenting portions of the materials contained in Plaintiffs' discovery request while withholding other items. Although Defendants' statements with respect to the Investment Committee are sensible and serve as a basis for denying Plaintiff's motion, Defendants' position with respect to the RPAC materials do not meet the same standards.

---

[1] Internal citations in all quoted material are omitted in this report,.

Defendants correctly state that certain meetings had not occurred at the time of the filing of the Complaint. They also stand on solid ground when they object to potential (but not yet made) production of materials "on a rolling basis and continuing indefinitely as these meetings continue to occur quarterly." (Response: 4)

Plaintiffs provide a chart in their reply (3) demonstrating that there was either partial or complete production of materials from the RPAC in the first three quarters of 2016. There has been no production of those materials in 2017.

Defendants' argument about the "continuing indefinitely" nature of the requested discovery is logical if additional requests were (or could be) made. As noted, *supra*, Plaintiffs' requests are specific and limited. Given the previous releases, the Special Master concludes that the requests with respect to the materials that have been partially released appear to be reasonably calculated to lead to the discovery of admissible evidence. It is logically possible that the sought-after RPAC materials may be relevant to Plaintiffs' claims. Production of the sought-after materials will not run afoul of the ERISA policy objectives which " provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously."   *Jeffreys v. Hartford Life and Accident Insurance Co.*, 2006 WL 1186493 (D. Colo. 2006).

Since a portion of the 2016 materials have been produced, the remaining production thereof (any materials from RPAC meetings in 2016) should not be so expensive as to outweigh its likely benefit, taking into account the amount in controversy, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

The Special Master therefore recommends, should the Court approve these recommendations, the remaining materials be produced within ten days thereafter subject to Defendants' right to seek an in camera review of any items for which they choose to make such a request.

With respect to the 2017 materials, the Special Master concludes that Defendants' positions, as outlined herein, are sensible and recommends that the Court deny that portion of Plaintiffs' motion.

Dated: January 16, 2018

Respectfully submitted,

John P. Leopold, Special Master
JAMS (Denver)