IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2556-WJM-NRN

LORRAINE M. RAMOS, *et al.*,

    Plaintiffs,

v.

BANNER HEALTH, *et al.*,

    Defendants.

## ORDER DENYING ON MOTIONS TO EXCLUDE EXPERT TESTIMONY

Plaintiffs Lorraine M. Ramos and others ("Plaintiffs") bring this class action against Defendant Banner Health ("Banner Health") and former and current employees (together, "Banner Defendants") alleging that Banner Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing the employee 401(k) plan ("Plan") to pay excessive recordkeeping fees. (ECF No. 118 ¶¶ 120–30.)[1] The case is set for an 8-day trial to the Court starting on January 6, 2020.

There are presently two motions before the Court: Banner Defendants' Motion to Exclude Testimony of Martin A. Schmidt ("Defendants' Motion") and Plaintiffs' Motion to Exclude and Strike Expert Opinion and Testimony of Thomas R. Kmak ("Plaintiffs' Motion"). (ECF Nos. 386 & 387.) For the reasons discussed below, Defendants' Motion is denied and Plaintiffs' Motion is denied.

---

[1] Plaintiffs also sued Jeffery Slocum & Associates ("Slocum"). Slocum has not participated in this briefing. (ECF No. 308 at 2 n.5.)

## I. BACKGROUND

A detailed background of this case was set forth in the Court's Order Granting in Part and Denying in Part Slocum's Motion for Summary Judgment. (ECF No. 372.) Familiarity with that factual background is presumed. In relevant summary, Plaintiffs contend that Banner Defendants failed to meet the industry practice standards by failing to seek competitive pricing for recordkeeping and administrative services provided to the Plan. (ECF No. 389 at 1.)[2] As a result, Plaintiffs contend, Banner allowed the Plan to pay uncapped, asset-based fees for these services, rather than paying per-participant and using market power to negotiate down fees. (*Id.*)

Plaintiffs endorsed Martin A. Schmidt as their expert on the level of recordkeeping and amount of administrative fees that would have been reasonable for the Plan. (ECF No. 387-1.) Schmidt produced an expert report dated January 31, 2018 and a rebuttal expert report dated April 30, 2018. (*Id.*; ECF No. 387-2.)

Defendants named Thomas R. Kmak as their expert on recordkeeping fees. (ECF No. 308-1.) Kmak submitted a rebuttal expert report dated March 26, 2018. (*Id.*) In June 2018, Plaintiffs moved to exclude and strike Kmak's testimony under Federal Rules of Civil Procedure 26(a) and 37(c), and Federal Rule of Evidence 702. (ECF No. 308.) The Court granted in part and denied in part that motion relying only on Rules 26(a) and 37(c), *sua sponte* reopened discovery, and ordered the Banner Defendants to obtain a supplemental report from Kmak and produce certain materials on which Kmak relied. (ECF No. 360.) Kmak provided a supplemental report dated April 30, 2019.

---

[2] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

Banner Defendants then requested a protective order for the documents that the Court ordered to be produced. (ECF No. 377.) The Court denied that request, and clarified the manner in which the documents were to be produced. (ECF No. 378.) Banner Defendants determined that they could not produce certain materials because of Kmak's contractual obligations to third parties, and thus withdrew those portions of Kmak's opinion which relied on the material that would not be produced. (ECF No. 381.) Specifically, Banner Defendants withdrew Kmak's opinions found in paragraphs 14, 35–41, 45, 46(e), and 47–49 of Kmak's March 26, 2018 report. (*Id.* at 2.) Banner also withdrew Kmak's April 30, 2019 report.

## II. LEGAL STANDARD

### A. Federal Rules of Civil Procedure 26 and 37

Rule 26(a)(2) generally requires an expert witness to provide a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for

deposition, any pretrial motions and trial." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006). If a party fails to provide information required by Rule 26(a)(2), it may not use the information or witness unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Court may, instead of or in addition to exclusion, order payment of reasonable expenses, inform the jury of the party's failure, or impose other appropriate sanctions. *Id.* A court may however allow evidence that violates Rule 26(a) if the violation was justified or harmless. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002).

**B.     Federal Rule of Evidence 702**

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Rule 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

An expert's proposed testimony also must be shown to be relevant and reliable. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance a material aspect of the case"

and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alterations incorporated). In addition, an expert's testimony, whether based on scientific, technical, or other specialized knowledge, must have a "reliable basis in the knowledge and experience of his discipline." *Bitler*, 400 F.3d at 1233 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993), *and Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). When determining reliability, district courts may consider:

> (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance."

*Bitler*, 400 F.3d at 1233 (quoting *Daubert*, 509 U.S. at 593). "[T]his list is neither definitive nor exhaustive." *Id.* District courts have wide discretion in deciding how to assess reliability and in making reliability determinations. *Id.*

The trial court's focus under Rule 702 is on the methodology employed by an expert, not on his or her conclusions. *Id.* at 1233. Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 595).

5

## III. ANALYSIS

### A. Defendant's Motion to Exclude (ECF No. 387)

Schmidt's expert opinion addresses what Banner should have paid for recordkeeping and administrative services for the Plan had the Banner Defendants acted as prudent fiduciaries. (ECF No. 387-1 at 41–42.) Banner Defendants challenge Schmidt's opinion as unreliable because "Schmidt does not appear to have relied on *any* data to support his conclusions . . . [and] [i]nstead, he bases his opinion on nebulous allusions to his 'experience.'" (ECF No. 387 at 3.)

"[T]he relevant reliability concerns may focus upon personal knowledge or experience" rather than scientific foundations in certain cases. *Kumho*, 526 U.S. at 150. However, a district court is not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"The trial court retains broad discretion in assessing an expert's reliability and making its ultimate determination of reliability." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). However, concerns about unreliable testimony misleading a jury do not arise in a bench trial. *Id.* Thus, "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value on presentation." *Id.* at 780. Nonetheless, "*Daubert*'s standards," albeit a more relaxed version of the standards, "must still be met." *Id.* at 779; *see Cyprus Amax Minerals Co. v. TCI Pac. Commc'ns, Inc.*, 2014 WL 693328, at *2 (N.D. Okla. Feb. 21, 2014). Thus, in *Tyson Foods*, the Tenth Circuit found that the district

6

court did not abuse its discretion in admitting expert testimony in a bench trial and subsequently finding it unreliable. *Tyson Foods*, 565 F.3d at 780; *see also Young v. Brock*, 2014 WL 553413, at *1 (D. Colo. Feb. 12, 2014).

The Banner Defendants recognize that the Court, as the trier of fact, could defer any challenge until trial but urge that the "sounder course would be to exclude Schmidt's testimony" so that the Court will not have to "waste considerable time at trial wading through Schmidt's unreliable testimony." (ECF No. 387 at 4.)

The Court disagrees. Schmidt has addressed the basic method by which he reached his conclusion on the range of expected recordkeeping and administrative service fees. (ECF No. 389 at 2–3.) The Court recognizes the potential weaknesses of Schmidt's testimony highlighted by Banner Defendants, particularly the somewhat vague statements connecting Schmidt's basic methodology to his outcome, as well as Schmidt's alleged *post-hoc* rationalizations of the range of appropriate recordkeeping fees derived from his own experience. (ECF No. 395 at 2–4.) However, based on the briefing submitted, the Court finds that issues regarding Schmidt's testimony and the basis for his opinions are better suited to resolution at trial through "[v]igorous cross-examination" and "presentation of contrary evidence." *Daubert*, 509 U.S. at 595.

The Court also acknowledges that Senior U.S. District Judge Robert E. Blackburn recently excluded similar testimony in an ERISA action after concluding that the expert's opinion "falters because the relevant methodology by which he reached his conclusions remains undisclosed." *Troudt v. Oracle Corp.*, 369 F. Supp. 3d 1134, 1139 (D. Colo. 2019). However, among other potential distinctions, *Troudt* did not address that the Court has considerably more leeway in admitting expert opinions when the trial

7

is to the court and not to a jury. Under the present circumstances, the Court will not exclude Schmidt's testimony on administrative and recordkeeping fees.

**B.     Plaintiff's Motion to Exclude (ECF No. 386)**

This is not Plaintiffs' first motion to exclude Kmak. (*See* ECF No. 308.) The Court previously found that Kmak's disclosures fell short of the Rule 26(a)(2) standard. It thus ordered Kmak to cure the disclosure deficiencies by producing additional information and by submitting to four additional hours of deposition testimony. (ECF No. 360 at 8.) The Court did not address Plaintiffs' reliability arguments at that time. (*Id.* at 3.) Kmak has since withdrawn his opinions based on his benchmarking report. (ECF No. 381.)

Plaintiffs again seek to exclude Kmak's testimony, and particularly paragraphs 42, 43, 44, and 46(b) of Kmak's rebuttal report, alleging that these paragraphs contain opinions that "solely relate to specific comparisons between the Plan" and Kmak's withdrawn benchmarking report. (ECF No. 386 at 3.) They contend that Kmak's opinions should be excluded under Rules 26 and 37—for failure to disclose the underlying information—or as unreliable under Federal Rule of Evidence 702.

The Court has carefully reviewed the disputed paragraphs. While each paragraph refers to the since-withdrawn benchmarking report, they do not "solely relate" to specific comparisons between the Plan and the benchmarking report. For instance, paragraph 42 identifies ten factors that a prudent fiduciary would consider when assessing reasonableness of fees. (ECF No. 308-1 at 12–13.) While paragraphs 43, 44, and 46(b) do include some comparison, they also identify factors which generally differentiate Fidelity and the Plan from other recordkeepers and plans. These are

8

observations to which Kmak could testify without reliance on the benchmarking report. The Court will therefore not exclude Kmak's testimony as a sanction for failure to disclose underlying data upon which he based his opinion.

Additionally, for the same reasons that the Court will not exclude Schmidt's testimony as unreliable, the Court will not exclude Kmak's testimony as unreliable. Like Schmidt, Kmak has described the process by which he evaluates recordkeeping and administrative fees, and has opined on the reasonableness of fees based on his usual approach. Plaintiffs may explore the weaknesses (if any) of such testimony on cross examination. *Daubert*, 509 U.S. at 595. Plaintiffs' Motion is therefore also denied.

## IV. CONCLUSION

1. Banner Defendants' Motion to Exclude Testimony of Martin A. Schmidt (ECF No. 387) is DENIED; and

2. Plaintiffs' Motion to Exclude and Strike Expert Opinion and Testimony of Thomas R. Kmak (ECF No. 386) is DENIED.

Dated this 26th day of November, 2019.

BY THE COURT:

William J. Martínez
United States District Judge