IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2556-WJM-NRN

LORRAINE M. RAMOS, *et al.*,

    Plaintiffs,

v.

BANNER HEALTH, *et al.*,

    Defendants.

---

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND MOTION FOR ATTORNEYS' FEES**

---

Before the Court is the parties' Motion for Final Approval of Settlement ("Joint Motion") (ECF No. 498) and Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Class Representative Awards from the Slocum Settlement Fund ("Fee Motion") (ECF No. 497). The Court held a settlement fairness hearing ("Settlement Hearing") on November 6, 2020. After considering the arguments raised at the Settlement Hearing and in the Joint Motion and Fee Motion, the Court granted the Joint Motion and Fee Motion by way of an oral ruling from the bench and stated that a written order would follow. (ECF No. 503.) This is that order.

### I. BACKGROUND

This litigation arises out of claims involving alleged breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, against Banner Health, certain of its current and former employees

(collectively, "Banner Defendants"), and Jeffrey Slocum & Associates, Inc. ("Slocum"), for the operation of the Banner Health 401(k) Plan (the "Plan").

Plaintiffs filed their putative class action complaint against a set of Banner Defendants on November 20, 2015 (ECF No. 1) and filed an amended complaint that added Slocum as a Defendant on November 9, 2016 (ECF No. 118). Plaintiffs alleged that Slocum breached its duty of prudence under 29 U.S.C. § 1104(a) by allowing the Plan: (1) to pay unreasonable fees to its recordkeeper, Fidelity; and (2) to maintain underperforming investment options, namely, the Fidelity Freedom Funds, and the Plan's Level 3 designated investment options, referred to internally by the Defendants as the "Mutual Fund Window." (*Id.*)

Thereafter, the parties engaged in extensive discovery, which included thousands of pages of discovery and taking numerous depositions. (ECF No. 421 at 2–5.)

On March 28, 2018, the Court denied Plaintiffs' motion to certify a class as to claims against Slocum (ECF No. 296 at 31) and reaffirmed this ruling on January 29, 2019 (ECF No. 345).

On April 23, 2019, the Court granted partial summary judgment in favor of Slocum on Plaintiffs' recordkeeping and Mutual Fund Window claims, finding that Slocum was not a fiduciary with regard to the commentary advice it gave on these topics. (ECF No. 372 at 19–22, 24–27.) Only Plaintiffs' claim concerning the advice that Slocum gave to the Plan's fiduciaries regarding the Fidelity Freedom Funds survived summary judgment. (*Id.* at 22–24.) At trial, given the lack of class certification against Slocum, Slocum could only have been found liable for the damages to the

seven individual Plaintiffs, which totaled $22,000.  (ECF No. 421 at 3.)

On December 31, 2019, Plaintiffs submitted a Consent Motion for Class Certification and Preliminary Approval of Class Settlement as to Claims Against Slocum.  (ECF No. 421.)  On May 18, 2020, the parties submitted a revised settlement to the Court.   (ECF No. 468; ECF No. 468-1.)  On May 19, 2020, the Court reviewed the proposed settlement agreement, and preliminarily approved the settlement as being fair and reasonable.  (ECF No. 469 at 3.)  It also preliminarily certified a class for settlement purposes, defined as:

> The Class Representatives and all current participants and beneficiaries of the Banner Health Employees 401(k) Plan as of [May 19, 2020], excluding Defendants.

(*Id.*)  The Court also approved the revised proposed class notice.  (*Id.*; ECF No. 468-1 at 63–70.)

In a declaration recently filed with the Court, the settlement administrator represented that the Court-approved Notice of Class Action Settlement and Fairness Hearing was individually e-mailed to all 50,877 Settlement Class members on July 22, 2020.  (ECF No. 498-3 at 2, ¶ 4.)  On the same date, the settlement administrator also established a toll-free telephone number that allowed Settlement Class members to listen to pre-recorded answers to frequently asked questions or request to speak with a live agent.  (*Id.* at 3, ¶ 5.)  As of October 6, 2020, there had been a total of 78 calls to the telephone line; of those calls, 22 individuals requested to speak with a live agent and all 22 individuals were connected with a live agent.  (*Id.*)

In addition, an Independent Fiduciary, Newport Trust Co., reviewed the Settlement Agreement and determined that:

3

> (i) the Settlement terms, the $500,000 Settlement amount provided for in the Settlement, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone; (ii) the scope of the release of claims is reasonable and is consistent with the release of other ERISA settlements we have reviewed in the past year; (iii) the terms and conditions of the transaction are no less favorable to the Plan than comparable arms-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances; and (iv) the transaction is not part of an agreement, arrangement, or understanding designed to benefit a party in interest.

(ECF No. 498-2 at 2–3.) Moreover, notice of the Settlement Agreement has been provided to all attorneys general as required under the Class Action Fairness Act, 29 U.S.C. §§ 1711, *et seq.*, and no attorney general has objected. (ECF No. 498 at 8.)

On September 24, 2020, Plaintiffs filed a Motion for Approval of Attorneys' Fees, Expenses, and Class Representative Awards from the Slocum Settlement Fund. (ECF No. 497.) Thereafter, on October 7, 2020, the parties filed a Motion for Final Approval of Settlement. (ECF No. 498.)

## II. SETTLEMENT AGREEMENT ANALYSIS

In deciding whether to approve a settlement in class action, a court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts consider four factors in evaluating the settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

>> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002).  The Court may also consider the fact that no objections were filed by any class member.  *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out.  One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing.  No objection was raised at the fairness hearing.  The Court gives these factors substantial weight in approving the proposed settlement.").

Having thoroughly reviewed the Joint Motion and the Settlement Agreement, the Court finds that the Settlement Agreement negotiated by counsel is fair, reasonable, and adequate.

First, the parties have demonstrated that the Settlement Agreement was negotiated at arms' length by counsel experienced in these types of cases.

Second, the parties have shown that serious questions of fact and law exist, particularly given that the Court had already denied Plaintiffs' Motion for Class Certification (ECF No. 296) and granted summary judgment in favor of Slocum on Plaintiffs' recordkeeping and Mutual Fund Window claims (ECF No. 372).  The

Settlement Agreement ensures the class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment.

Third, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation. Courts have held that the presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia Marketing, Ltd.*, 2017 WL 5900344, at *3 (D. Colo. Nov. 30, 2017).

Given the lack of class certification against Slocum, Slocum could only have been liable to the seven individual Plaintiffs for damages of up to $22,000. (ECF No. 498 at 4.) By contrast, under the Settlement Agreement, Slocum has agreed to pay $500,000 to settle this action, which will benefit current Plan participants by defraying the Plan's recordkeeping fees. (*Id.* at 7.) The Court therefore finds that the Settlement Agreement provides a significant and immediate benefit to the class.

Finally, both parties have represented their view that the Settlement Agreement is fair and reasonable. The fact that no class member objects shows that the class also

considers this settlement fair and reasonable.  *See In re Dun & Bradstreet*, 130 F.R.D. at 372.

As set forth above, the Court finds that each of the factors weighs in favor of finding that the Settlement Agreement is fair, reasonable, and adequate.  Accordingly, the Court fully and finally approves the Settlement Agreement and grants the Joint Motion (ECF No. 498).

## III.  INCENTIVE AWARD

When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The parties propose that a $2,500 incentive payment be paid to each of the seven named plaintiffs in this action: Lorraine Ramos, Constance Williamson, Karen McLeod, Robert Moffitt, Cherlene Goodale, Linda Heyrman, and Delri Hanson (collectively, the "Named Plaintiffs").  (ECF No. 497 at 2.)  The Named Plaintiffs spent time and effort working on the case with counsel over the course of several years, and two of them (Ramos and Moffitt) were personally in attendance at the trial for extended periods of time.  They provided Plaintiffs' counsel with documents, responded to written discovery, sat for depositions, and prepared to testify at trial.  (*Id.* at 14.)  Their

commitment to the case, the personal sacrifices of their time while pursuing this litigation, and the outcome achieved warrants a significant award in this case.

Moreover, Plaintiffs' counsel represented during the Settlement Hearing that it had consulted with the Named Plaintiffs, who were in agreement that they should receive equal incentive payments.

Thus, a $2,500 incentive payment for each of the Named Plaintiffs is reasonable given their participation in the case and the overall recovery in this case. The Court approves an $2,500 incentive award to each of the Named Plaintiffs.

## IV.  ATTORNEYS' FEES

Plaintiffs' counsel entered into a contingency fee arrangement with the Named Plaintiffs, which provides that Plaintiffs' counsel would receive one-third of any recovery plus expenses. (ECF No. 497-1 at 13, ¶ 31.) Under this arrangement, Plaintiffs' counsel seeks an attorneys' fee award totaling $166,667.00, as well as $8,199.40 of out-of-pocket expenses. (ECF No. 497 at 1.)

When considering the appropriateness of an attorneys' fees award, the Court considers the "*Johnson* factors": (1) the time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesireability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in similar cases.  *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979).

The Court recognizes that ERISA is "an enormously complex and detailed statute."  *Teets v. Great-W. Life & Annuity Ins. Co.*, 315 F.R.D. 362, 370 (D.Colo. 2016) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)).  This action involved very complex questions of law that have not been widely litigated.  *See Waldbuesser v. Northrop Grumman Corp.,* 2017 WL 9614818, at *4 (C.D.Cal. Oct. 24, 2017) ("ERISA 401(k) fiduciary breach class actions involve complex questions of law and have not been widely litigated to this point.").  As has been evident in the course of pretrial proceedings, as well as at the trial to the Court, Plaintiffs' counsel has the specialized expertise to properly litigate this action.

The Court finds that the requested amount of fees is reasonable considering the effort expended on this case by class counsel, the risks and difficulties inherent in ERISA litigation, the discovery undertaken, and the skill required and dedication displayed over the litigation of this matter.

Significantly, under the Settlement Agreement negotiated by counsel, Slocum agreed to pay $500,000 to settle this class action, which is significantly more than Slocum's potential liability of $22,000 at trial.  (ECF No. 497 at 9.)  Thus, the negotiated Settlement Agreement will benefit *all* Class members, not just the Named Plaintiffs.  This is a good result for the Class and weighs very heavily in favor of approving the amount of fees requested.  *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630

(D. Colo. 1976) (noting that "the amount of the recovery, and end result achieved are of primary importance" when considering what constitutes a reasonable attorney fee).

Moreover, Plaintiffs' counsel spent an estimated 652 hours of attorney time litigating this action against Slocum over the course of roughly four years. (ECF No. 497-3 at 3, ¶ 5.) If Plaintiffs' counsel utilized a billable hour fee model using attorney rates that had been approved in other class actions, its attorneys' fees would have been significantly higher. (*Id.*)

Having considered the applicable *Johnson* factors, the Court finds that $166,667.00 in attorneys' fees and $8,199.40 in costs is fair and reasonable. The Court therefore grants the Fee Motion (ECF No. 497).

## V.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The parties' Motion for Final Approval of Settlement (ECF No. 498) is GRANTED;

2. Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Class Representative Awards from the Slocum Settlement Fund (ECF No. 497) is GRANTED;

3. The parties' Class Action Settlement Agreement (ECF No. 468-1) is APPROVED;

4.  Lorraine Ramos, Constance Williamson, Karen McLeod, Robert Moffitt, Cherlene Goodale, Linda Heyrman, and Delri Hanson are AWARDED an incentive award for serving as class representatives in the amount of $2,500 each to be paid from the Settlement Fund;

5. Plaintiffs' attorneys' fees and costs shall be paid to Schlichter Bogard & Denton from the Settlement Fund in the amounts specified under the Class Action Settlement Agreement and confirmed herein;

6. The Settlement Administrator shall have final authority to determine the amount of the Net Settlement Amount and to transmit such amount to the Plan's recordkeeper to be used to offset the Plan's recordkeeping fees, pursuant to the Plan of Allocation discussed in Article 6 of the Class Action Settlement Agreement;

7. The Court shall retain jurisdiction over the interpretation and implementation of the Class Action Settlement Agreement;

8. Pursuant to the parties' stipulation in the Class Action Settlement Agreement, all claims in this action against Slocum are hereby voluntarily DISMISSED WITH PREJUDICE; and

9. The Parties shall bear their own fees and costs with the exception of those provided for in the Class Action Settlement Agreement and confirmed herein.

Dated this 10th day of November, 2020.

BY THE COURT:

William J. Martinez
United States District Judge