**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-2556-WJM-NRN

LORRAINE M. RAMOS, *et al.*,

      Plaintiffs,

v.

BANNER HEALTH, *et al.*,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

---

This matter is before the Court on Plaintiffs' Motion for Attorney[s'] Fees and Costs, and for an Award to the Class Representatives, and Memorandum in Support ("Motion"). (ECF No. 478.) For the reasons stated below, the Motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs Lorraine M. Ramos and others ("Plaintiffs") brought this class action against Banner Health ("Banner"), as well as current and former employees of Banner Health (together, "Banner Defendants"), alleging that Banner Defendants breached their fiduciary duties related to the Banner Health Employees 401(k) Plan ("Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* After filing the initial complaint, Plaintiffs sought and obtained certification of the following class: "All participants and beneficiaries of the Banner Health Employees 401(k) Plan from November 20, 2009 through the date of judgment, excluding the

Defendants." (ECF No. 296 at 31.)

On January 6, 2020, the case proceeded to an eight-day bench trial before the undersigned on the following claims:

- Breach of the duties of prudence and loyalty by allowing the Plan's recordkeeper to collect allegedly excessive recordkeeping and administrative fees, 29 U.S.C. § 1104 (Count I);

- Breach of the duties of prudence and loyalty by offering and failing to monitor allegedly imprudent investment options accessible to those who participated in the Plan via a Mutual Fund Window, 29 U.S.C. § 1104 (Count II);

- Breach of the duties of prudence and loyalty by retaining the Fidelity Freedom Funds after they allegedly became an imprudent investment option, 29 U.S.C. § 1104 (Count II);

- Breach of the duty to monitor performance of other fiduciaries, 29 U.S.C. §§ 1105(a) & 1109(a) (Count III);

- Prohibited transactions with a party in interest due to the allegedly excessive fees of the recordkeeping fee arrangement, 29 U.S.C. § 1106(a) (Count IV); and

- Prohibited transactions for payment of Banner expenses from Plan assets, 29 U.S.C. § 1106(b) (Count V).

(ECF No. 470 at 2–3.) Plaintiffs sought approximately $85 million in Plan losses and injunctive relief. (*Id.* at 3.)

On May 20, 2020, the Court issued the Findings of Fact and Conclusions of Law

Entered Upon Trial on the Merits to the Court (ECF No. 470), in which the Court concluded: (1) Plaintiffs were entitled to judgment in their favor on Counts I, III, and V; (2) excluding prejudgment interest, Plaintiffs were entitled to losses in the amount of $1,661,879.83 on Count I and $687,589 on Count V; (3) prejudgment interest at a fixed interest rate of 3.25%, with interest compounded monthly, was appropriate; and (4) Defendants were entitled to judgment in their favor on Counts II and IV. (*Id.* at 134.) The Court subsequently awarded pre-judgment interest of $781,612.79, for a total award of losses and pre-judgment interest to the Plaintiffs in the amount of $3,131,081.62. (ECF No. 472 at 3.)

## I. LEGAL STANDARD

Pursuant to 29 U.S.C. § 1132(g)(1), in an ERISA action, courts have the discretion to allow reasonable attorneys' fees and costs to either party. "[C]ourts should not grant attorney's fees under ERISA as a matter of course . . . ." *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 (10th Cir. 1992) (internal quotation marks omitted).

The party seeking § 1132(g)(1) fees must first demonstrate "some degree of success on the merits" that rises above a "trivial success" or "purely procedural victor[y]." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). When a claimant makes that showing, this Court moves on to the five relevant considerations prescribed by the Tenth Circuit for determining whether to award fees:

> (1) the degree of the opposing party's culpability or bad faith;
>
> (2) the opposing party's ability to satisfy an award of fees;
>
> (3) whether an award of fees would deter others from acting under similar circumstances;

(4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' positions.

*Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013). These factors are sometimes known as the "*Gordon* factors" because they originated in this Circuit with *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983). "No single factor is dispositive and a court need not consider every factor in every case." *Cardoza*, 708 F.3d at 1207.

Even if the *Gordon* factors support an award of attorneys' fees, a district court must limit the amount of fees and costs to a reasonable amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

## II. ANALYSIS

In the Motion, Plaintiffs request that the Banner Defendants pay their attorneys' fees totaling $5,286,413.60 and expenses of $108,564.98. (ECF No. 478 at 58.) Plaintiffs further request that each of the seven named class representatives receive incentive awards of $15,000 from the class recovery. (*Id.*)

### A.   Whether Fees Should Be Awarded

#### 1.   Whether Plaintiffs Achieved Some Degree of Success on the Merits

Plaintiffs contend that they prevailed on "three out of five claims that were articulated in the operative-complaint" and that Court "clear[ly] unambiguous[ly]" determined:

- the RPAC and Banner Defendants violated the duty of prudence by failing to regularly assess whether the Plan paid reasonable recordkeeping and administrative fees to Fidelity between November 20, 2009 and December 31, 2016. In failing to regularly assess whether the fees were reasonable,

they did not act in the best interest of Plan Participants;

- the reimbursement by the Plan to Banner of unauthorized and undocumented expenses is a per se prohibited transaction, and any such authorized payments to Banner during calendar years 2010 and 2011 caused economic losses to Plan Participants; and

- the failure of the Board and the IC to fully monitor the Plan and the CEO, and of the CEO to monitor the RPAC, and of the RPAC to monitor both the excessive recordkeeping fees paid by the Participants, as well as the Banner expenses improperly reimbursed by the Plan, caused economic losses to the Plan Participants, losses for which all Banner Defendants will be held responsible.

(ECF No. 478 at 14 (quoting ECF No. 470 at ¶¶ 344, 382, 395).)

In response, the Banner Defendants contend that Plaintiffs "lost this case in nearly every respect," that the Banner Defendants "prevailed entirely as to the two largest [theories of liability] (monitoring of the Fidelity Freedom Funds and monitoring the Plan's Mutual Fund Window)," and that "Plaintiffs obtained a total of just $3.1 million in monetary relief—a mere 3.6% of the $85 million they sought."  (ECF No. 488 at 5.)

Although the parties dispute Plaintiffs' degree of success at trial, it is clear that Plaintiffs obtained *some* success on the merits.  *Hardt*, 560 U.S. at 255.  The Court therefore turns to the *Gordon* factors to determine whether an award of attorneys' fees is proper.

2.    The *Gordon* Factors

The Banner Defendants do not dispute that Banner can pay a fee award or that Plaintiffs sought relief on behalf of the Plan.  (ECF No. 488 at 8 n.3.)  The Court therefore focuses its analysis on the degree of the Banner Defendants' culpability, whether an award of attorneys' fees would deter others from acting similarly, and the

relative merits of the parties' positions.

        i.    *Culpability or Bad Faith*

Plaintiffs contend the Plan's losses, which result from excessive fees paid to Fidelity and prohibited payments to Banner, "stem from a pattern of behavior by the Plan fiduciary that demonstrates a complete disregard for the most basic tenets of ERISA." (ECF No. 478 at 17.)  Among other things, Plaintiffs contend that the Banner Defendants "ignor[ed] the basic fundamental principles of ERISA, ignor[ed] the repeated advice of multiple advisors, and wholly fail[ed] to ask the most basic questions that a knowledgeable, prudent fiduciary would ask," which demonstrates that they acted with "egregious culpability." (*Id.* at 18.)

The Banner Defendants respond that they did not act culpably or in bad faith and that their conduct was "at most negligent, rather than 'censurable.'" (ECF No. 488 at 9.) The Court agrees.

Although the Court determined that the Banner Defendants breached their duty of prudence by failing to monitor Banner's service agreement with Fidelity and improperly allowing the Plan to reimburse Banner for expenses, such breaches were the byproduct of the Banner Defendants' negligence, not intentional wrongdoing. Stated differently, the evidence introduced at trial failed to establish that the Banner Defendants acted with culpability or bad faith. *See Padilla v. Unum Provident*, 2008 WL 11413514, at *2 (D.N.M. Jan. 16, 2008) (recognizing that the terms culpability and bad faith connote "more than mere negligence or error" (quotation marks omitted)).

Accordingly, the Court finds that this *Gordon* factor favors the Banner Defendants.

ii.　　*Deterrence*

Plaintiffs contend that "[u]nless [the] Banner Defendants are compelled to pay those attorneys' fees and costs (and thereby truly make the Plan and its participants whole from their breach of duty), [the] Banner Defendants and other fiduciaries of multi-billion dollar plans will have little incentive to invest the effort and resources that ERISA requires." (ECF No. 478 at 22.) They further argue that "[i]t cannot be expected that attorneys will invest such time – more than the time of 3 attorneys working full time for a year, to benefit ERISA participants if, after doing so successfully, they do not obtain full compensation for that time." (*Id.* at 23–24.)

The Banner Defendants counter that because they "'did not act with any culpability or bad faith, it necessarily follows that an award of fees would have no deterrence' value." (ECF No. 488 at 12 (quoting *Simonia v. Hartford Ins. Co.*, 2009 WL 10700849, at *4 (C.D. Cal. June 9, 2009)).) According to the Banner Defendants, they have "ample incentive to meet their fiduciary duties short of attorney's fee awards" because Banner's 401(k) plan is an important tool to recruit and retain talented employees and they do not want to be exposed to regulatory action. (*Id.* at 12.)

Although this *Gordon* factor is phrased in terms of deterring others, the Court finds that deterrence to Banner itself is also an appropriate consideration. *Cf. Gordon*, 724 F.2d at 109 ("when determining whether to award attorney's fees under section 1132(g)(1), the district court should consider these factors *among others*" (emphasis added)). The Court finds that an award of attorneys' fees and expenses may help deter the Banner Defendants from similar behavior in the future by, *inter alia*, giving them a further incentive to review and monitor Plan's investments and administrative functions

at frequent intervals.  The Court likewise finds that an award of attorneys' fees may deter others by raising awareness for parties' duties under ERISA.

Accordingly, while the Court concludes that this *Gordon* factor favors Plaintiffs, it will give this factor only moderate weight, given that Defendants did not act with a level of culpability beyond that of negligence.

### iii. *Relative Merits of the Parties' Positions*

Plaintiffs contend that their arguments were "vastly stronger" than those of the Banner Defendants.  (ECF No. 478 at 25.)  However, while it is true that the Court ultimately did find in Plaintiffs' favor on portions of Counts I, III, and V, the Court does not agree with Plaintiffs' revisionist history of the trial.  After the 8-day bench trial, the Court concluded, *inter alia*, that:

- Plaintiffs failed to prove: (a) a reasonably precise amount of damages allegedly resulting from Banner Defendants' decisions to offer, and maintain without monitoring, the Mutual Fund Window investment alternatives; and (b) that any breach of the duty of prudence allegedly resulting by the failure to monitor the Mutual Fund Window offerings actually caused any economic losses to any of the Plan Participants (ECF No. 470 ¶ 309);

- Plaintiffs failed to establish by a preponderance of the evidence that any breach of the duties of prudence or loyalty with respect to the alleged failure to monitor and remove the Mutual Fund Window investment alternatives caused any economic losses to Plan Participants (*see id.* ¶ 313);

- Dr. Buetow's assumptions, methods, and calculations were so unreliable that they cannot support a finding, by the preponderance of the evidence, that offering unmonitored funds through the Mutual Fund Window caused any loss to the Plan (*see id.* ¶ 87);

- Plaintiffs failed to establish by a preponderance of the evidence that the Banner Defendants' decision to retain the Fidelity Freedom Funds as an investment option until May 2015 breached Banner Defendants' duties of prudence or loyalty (*see id.* ¶ 330);

- Plaintiffs failed to show that the recordkeeping arrangement with Fidelity was a prohibited transaction (*see id.* ¶ 369); and

- Plaintiffs failed to present any evidence from which the Court could reasonably conclude that equitable relief to restrain the Banner Defendants from engaging in any ongoing or future breach of the duty to monitor other fiduciaries was necessary or appropriate (*see id.* ¶ 404).

Moreover, while the Court found in favor of Plaintiffs on their breach of duty of prudence claim, it rejected Plaintiffs' expert testimony on damages, specifically as to the reasonable annual ranges of recordkeeping fees. The Court did so, in part, because it found that Plaintiffs' expert's calculation of damages methodology was not replicable, and because his opinions were based on vague and insufficient references to his history in the 401(k) plan industry. This state of affairs caused the Court to conclude that, given the remedial nature of ERISA, it was incumbent on the Court to fashion its own calculation of damages on Count I. (*Id.* ¶¶ 196, 347–54.) Indeed, had the Court not done so, on its own initiative, Plaintiffs would not have recovered *any* monetary damages on their otherwise successful excessive recordkeeping fees claim. The Court ultimately awarded Plaintiffs approximately $3.1 million, a tiny fraction of the $85 million that they originally claimed in damages. (*See* ECF No. 488 at 19.)

The Tenth Circuit recently affirmed the Court's findings and conclusions in this case in their entirety, determining, *inter alia*, that: (1) the Court did not abuse its discretion in rejecting Schmidt's testimony on damages and "operated well within its purview in calculating damages and prejudgment interest"; (2) the service agreement between Banner and Fidelity was not a prohibited transaction; and (3) that the Court properly exercised its discretion in denying injunctive relief. (ECF No. 505 at 9–10, 20.)

Thus, although Plaintiffs achieved some success at trial, the Court cannot find

that Plaintiffs' arguments were "vastly stronger" than the Banner Defendants' arguments.

* * * *

Nonetheless, after considering and balancing each of the *Gordon* factors, the Court finds that some award of attorneys' fees in Plaintiffs' favor is appropriate.

**B.     Attorneys' Fee Award**

1.     <u>General Standard</u>

As noted above, any fee award must be reasonable under the circumstances. *Hensley*, 461 U.S. at 433.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Id*.  This is commonly referred to as the "lodestar method" for calculating fees.  Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the suit and its outcome.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion.  *Hensley*, 461 U.S. at 436–37.

As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands.'"  *Burch v. La Petite Acad., Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1255 (10th Cir. 1998)).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.

*Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).  "If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, in its discretion, use other relevant factors, including its own knowledge, to establish the rate."  *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (internal quotation marks omitted).

The party requesting fees has the burden to "prove and establish the reasonableness of each dollar, each hour, above zero," and bears the burden of providing the required documentation and demonstrating that the fees requested are reasonable.  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).

The best evidence of reasonable fees is "meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'"  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)).  To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.  *Case*, 157 F.3d at 1250.  The party seeking fees must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  Where such an effort appears "inadequate, the district court may reduce the award accordingly."  *Id.* at 433; *Jane L.*, 61 F.3d at 1510.

Moreover, when a plaintiff "is deemed 'prevailing' even though he succeeded on only some of his claims for relief," a court may exclude a portion of the fee if claims on which plaintiff lost were "unrelated to the claims on which he succeeded."  *Hensley*, 461 U.S. at 434.  A court may also reduce the overall award if a party "has achieved only

partial or limited success."  *Id.* at 436.

2.    Hourly Rates

Plaintiffs request an hourly rate of $1,060 per hour performed by senior partners with at least 25 years of experience, $900 per hour for work performed by attorneys with 15–24 years of experience, $650 per hour for work performed by attorneys with 5–14 years of experience, $490 per hour for work performed by attorneys with 0–4 years of experience, and $330 per hour for work performed by paralegals.  (ECF No. 478 at 30.) Plaintiffs argue that because their counsel are experts in ERISA litigation, which requires specialized knowledge, the relevant "community" rate must be a national one. (*Id.* at 27–28.)  The Banner Defendants do not challenge the reasonableness of the hourly rates claimed by Plaintiffs' counsel.  (ECF No. 488 at 16 n.5.)

3.    Billed Hours

Plaintiffs request payment for over 6,900 hours of billable work, which represents "*only* those hours expended on their successful claims related to the Plan paying excessive fees to Fidelity and making prohibited payments to Banner Health, along with other matters that pertain thereto, including obtaining class certification and numerous discovery disputes."  (ECF No. 478 at 32 (emphasis in original).)

Plaintiffs' request includes: (1) a 50% reduction for specified categories of billable time that is attributable to their case against Slocum, and (2) a 40% reduction of time "that cannot be differentiated" to account for the fact that they only prevailed on three of the five counts at trial.  (*Id.* at 34–35.)  Moreover, Plaintiffs have excluded from their fee request over 1,200 hours for the claims on which they did not prevail or claims related to Slocum, as well as approximately 1,600 hours spent on clerical tasks and internal

12

meetings.[1] (*Id.*)

Plaintiffs request for fees can be broken down into the following categories of billable time:

| Task | Total Hours | Reduced Hour Request | Requested Fees |
|---|---|---|---|
| Investigation and Complaint | 283.5 | 170.1 | $ 140,314.20 |
| Amended Complaint | 66.4 | 33.2 | $ 21,842.00 |
| Class Certification | 253.8 | 126.9 | $ 92,070.50 |
| Discovery | 1,273.8 | 764.28 | $ 620,682.00 |
| Depositions | 1,352.4 | 811.44 | $ 614,886.00 |
| Motion Practice | 773.5 | 464.1 | $ 348,168.60 |
| Experts | 1167 | 1167 | $ 958,549.00 |
| Mediation | 171.5 | 85.75 | $ 76,378.50 |
| Pre-Trial Preparations | 451.9 | 271.14 | $ 214,693.80 |
| Trial | 4,253.9 | 2,552.34 | $ 1,836,438.60 |
| Post-Trial | 831.8 | 499.08 | $ 362,390.40 |
| | | | |
| **TOTAL** | **10,879.5** | **6,945.33** | **$ 5,286,413.60** |

(ECF No. 478-1 at 37.)

The Banner Defendants respond the Court should reduce any attorneys' fee award by approximately 80%, for a maximum of $1.03 million of attorneys' fees, to reflect Plaintiffs' limited success in the litigation. (ECF No. 488 at 19.) According to the Banner Defendants, Plaintiffs only obtained a small fraction of the damages they sought, Plaintiffs did not prevail on their request for injunctive relief, and the Court

---

[1] To the extent that Plaintiffs attempt to cast the reduction of hours related to Slocum's involvement in the case as a reasonable exercise of billing judgment, the Court is not persuaded. In its Order Granting Motion for Final Approval of Settlement and Motion for Attorneys' Fees, the Court already approved $166,667 in attorneys' fees for 652 hours of attorney time, and $8,199.40 in costs related to Plaintiffs' litigation against Slocum. (ECF No. 504 at 10.)

rejected much of Plaintiffs' evidence and found in Defendants' favor on several claims.
(*Id.* at 19–22.)  The Banner Defendants further argue that the Courts should strike
numerous time entries that are insufficient to show that the expended time was
reasonable, including block-billed, vague, and implausible entries.  (*Id.* at 17–18.)

      4.   <u>Analysis</u>

For the reasons set forth below, the Court concludes that a substantial reduction
in the amount of Plaintiffs' requested attorneys' fee award is appropriate.

First, the Court has carefully reviewed Plaintiffs' billing records and finds that the
requested hours do not reflect any semblance of billing judgment.  Plaintiffs' billing
records are wildly excessive and include a large number of charges for redundant tasks.
*See Hensley*, 461 U.S. at 434 (recognizing that the party seeking fees must make a
"good-faith effort to exclude from a fee request hours that are excessive, redundant, or
otherwise unnecessary").

For example, the Court is troubled by the fact that Plaintiffs' attorneys billed
4,253.90 hours on trial-related work for an 8-day trial and that they spent 831.8 hours on
post-trial matters.  While the Court recognizes that trials are time-consuming endeavors,
certain billing entries strain credulity.  For instance, Plaintiffs' records reflect that fact
that certain attorneys billed 24 hours in a single day, or as many as 64 hours over a 3-
day period.  (*See* ECF No. 489 at 54.)  Additionally, by the Court's own calculation, one
attorney billed over 488 hours working on Plaintiffs' Findings of Fact and Conclusions of
Law—and he was far from the only attorney to bill time for that filing.  (*See id.* at 55–57.)
That same attorney billed a total of *8 hours* working on a notice of supplemental
authorities that is only approximately one page in length.  (*See id.* at 57.)  By any

measure, such entries do not reflect reasoned billing judgment.  This deficiency is wholly apart from the fact that entries which reflect alleged 24 hours of billable work in a single day, or over 5,000 hours in the immediate pretrial and post-trial time periods, dramatically reduce the Court's confidence in the accuracy of these billing records as a whole.

The Court further notes that many billing entries reflect block-billing and that certain attorneys did not bill in tenth-of-an-hour increments at all.  (*See id.* at 55–56 (between February 14, 2020 and March 1, 2020, every billing entry is billed as a full hour or to the nearest half hour); *see also id.* at 53–57.)

Moreover, Plaintiffs' counsel's billing records demonstrate that they consistently tasked more expensive senior lawyers with work that could have been done by less expensive junior lawyers.  Plaintiffs' counsel does not appear to have utilized junior attorneys with 0–4 years' experience in any meaningful manner, if at all, and instead allocated virtually all of their work to the attorneys charging higher rates.  For example, attorneys with 15–24 years' of experience billed over half of the attorney time incurred in the following stages of the litigation: investigation and complaint, class certification, discovery, depositions, experts, mediation, pre-trial, and trial.  (*See* ECF No. 478-1 at 19–36.)  As a result of Plaintiffs' allocation of labor, Plaintiffs' billings are significantly higher than they would have been if more junior attorneys had completed the less complex tasks.

Second, notwithstanding the fact that the Banner Defendants do not challenge the reasonableness of Plaintiffs' counsel's hourly rates (ECF No. 488 at 16 n.5), the Court is not convinced that Plaintiffs have proven the prevailing market rate for similar

services.  For example, although Plaintiffs assert that the relevant community rate must be—"without question"—a national rate, Plaintiffs make no effort to: (1) identify the billable hourly rate of Colorado-based attorneys specializing in ERISA litigation, or (2) demonstrate that there are not attorneys specializing in ERISA litigation with comparable skill, experience, and reputation in Colorado.  A cursory review of recent ERISA fee awards reflects that the Denver market for ERISA attorneys is substantially lower than the national hourly rate charged by Plaintiffs' counsel.  *Cf. Eighth Dist. Elec. Pension Fund v. Power Founds., LLC*, 2020 WL 417585, at *2 (D. Colo. Jan. 24, 2020) (finding that hourly rate of $260 is a reasonable rate in the metropolitan Denver market for ERISA practitioner); *Cross v. Qwest Disability Plan*, 2010 WL 5476790, at *6 (D. Colo. Dec. 30, 2010) (awarding hourly rate of $290 for ERISA practitioner); *Degrado v. Jefferson Pilot Financial Ins. Co.*, 2009 WL 1973501, at *10 (D. Colo. July 6, 2009) (awarding hourly rate of $400 per hour for ERISA practitioner).

Third, awarding Plaintiffs $5,286,413.60 in attorneys' fees would be wholly inconsistent with their limited success at trial.  *See Jane L.*, 61 F.3d at 1511 (recognizing that district courts "must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar."); *see also Hensley*, 461 U.S. at 436–37 (recognizing that courts may "reduce the award to account for the limited success" of the moving party).

As set forth in Part II.A.2.iii, the Court rejected several of Plaintiffs' key theories of liability, entered judgment in favor of Defendants on some of Plaintiffs' claims, rejected much of Plaintiffs' evidence, including much of the testimony of their two expert

witnesses, and rejected Plaintiffs' request for injunctive relief. Moreover, and as previously discussed in detail, although Plaintiffs prevailed on their claim that Banner had breached its duty of prudence by failing to monitor Banner's service agreement with Fidelity, and that this breach resulted in losses to the Plan, Plaintiffs did not present a reliable theory of damages that passed Federal Rule of Evidence 702 muster, and the Court was forced to fashion its own calculation of the damages. Plaintiffs obtained only $3,131,081.62—or approximately 3.68%—of their request for $85 million of damages.

* * * *

Having determined that a substantial discount to Plaintiffs' attorneys' fee award is warranted, the Court must determine what amount of attorneys' fees reasonably compensates Plaintiffs for their litigation successes in this action. In making this determination, the Court considered three potential measures of attorneys' fees.

The Court first considered the reasonableness of an attorneys' fee award based on Plaintiffs' proportional recovery of their total requested damages. Because Plaintiffs recovered just 3.68% of the $85 million in Plan losses that they sought, the Court could have limited Plaintiffs to 3.68% of their requested attorneys' fees, for a total fee award of $194,540.02. However, in the Court's view, this amount does not adequately and reasonably capture Plaintiffs' degree of success at trial.

The Court next considered the reasonableness of an attorneys' fee award based on Plaintiffs' proportional recovery of the total requested damages for the theories on which they prevailed at trial. Plaintiffs recovered $3,131,081.62—or 15.9%—out of the total $19,687,589 that they requested on Counts I and V.[2] The Court could therefore

---

[2] Plaintiffs sought approximately $19 million for Count I and $687,589 for Count V for a

could have limited Plaintiffs to 15.9% of their requested attorneys' fees for a total fee award of $840,539.76. Albeit closer, in the Court's judgment this amount still does not adequately capture Plaintiffs' relative degree of success at trial.

After exhaustive and detailed consideration of the totality of the circumstances, the Court has decided to award Plaintiffs 20% of their total attorneys' fee request. In the Court's view, an 80% reduction of the claimed attorneys' fees is a reasonable reflection of the Plaintiffs' limited success in this matter, as well as an appropriate reduction of Plaintiffs' excessive billable hours and hourly fee rates. *Cf. Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1101–05 (10th Cir. 2006) (affirming a fee award of 10% of the lodestar figure which reflects the party's limited success in the case); *Reyes v. Snowcap Creamery, Inc.*, 2014 WL 2459740, at *2, *6 (D. Colo. June 2, 2014) (reducing lodestar by 75% to reflect the fact that plaintiff "only nominally won" the lawsuit and recovered less than 2% of his claimed damages); *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1128–29 (D. Colo. 2008) (reducing lodestar by 70% where plaintiff prevailed on only one claim out of twelve claims asserted and jury awarded only 5% of requested damages).

Accordingly, for the reasons set forth above, the Court will award Plaintiffs $1,057,282.72 in attorneys' fees.

**D.    Expenses**

Plaintiffs request an award of $108,564.98 in expenses, categorized as follows:

| Expenses | Incurred | Requested |
|---|---|---|
| Copies | $ 19,805.75 | $ 11,883.45 |

---

total of $19,687,589. (ECF No. 458 ¶ 396; ECF No. 470 ¶¶ 182, 385–88.)

| | | |
|---|---|---|
| Filings, Transcripts, Subpoena Services, & Related Costs | $ 16,898.70 | $ 10,139.22 |
| Deposition Related Costs | $ 45,013.49 | $ 27,008.09 |
| ESI | $ 7,239.26 | $ 4,343.56 |
| Mediation | $ 3,550.00 | $ 3,550.00 |
| Travel | $ 71,180.71 | $ 42,708.43 |
| Trial Costs | $ 14,887.05 | $ 8,932.23 |
| | | |
| **Total** | **$178,574.96** | **$108,564.98** |

(ECF No. 478-1 at 38.)  Plaintiffs' requested costs include: (1) a 50% reduction for their mediation costs to account for their claims against Slocum, and (2) a 40% reduction for other expenses to account for the fact that they only prevailed on three of the five counts at trial.  (*Id.*)

The Banner Defendants argue that the Court should reduce an expenses award in two respects: first, the Court should exclude the claimed copying costs because Plaintiffs have not demonstrated that these are properly compensable costs; and second, the Court should reduce the remaining expenses by 80% to reflect Plaintiffs' limited success in the litigation.  (ECF No. 488 at 24–25.)

As with Plaintiffs' requested attorneys' fees, the Court finds that many of Plaintiffs' claimed expenses are grossly excessive.  For example, Plaintiffs purportedly incurred a staggering $19,805.75 of copying costs, $71,180.71 of travel costs, and a whopping $61,912.19 in costs for, in addition to depositions, things like "filings" and "subpoena services".  *Cf. Case*, 157 F.3d at 1258 (rejecting request for $11,391.60 of copying costs, which represented a "grossly excessive" 71,194 copies).  That Plaintiffs are only seeking to recover 40–50% of their expenses does not assuage the Court's discomfort when the initial figures do not reflect Plaintiffs' limited success at trial or

reasoned billing judgment.

Accordingly, the Court will award Plaintiffs 20%, or $21,713, of their requested expenses.

**E.    Awards to Class Representatives**

When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation.  *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1010 (D. Colo. 2014) (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).  Incentive awards are within the discretion of the Court.  *Id.*

Plaintiffs request that $15,000 incentive awards be paid out of the class recovery to each of the seven named class representatives: Lorraine Ramos, Constance Williamson, Karen McLeod, Robert Moffitt, Cherlene Goodale, Linda Heyrman, and Delri Hanson.  (ECF No. 478 at 55.)  Plaintiffs contend that these class representatives "responded to document requests and interrogatories; reviewed pleadings; assisted with discovery; and attended depositions and trial."  (*Id.*)  They further point out that "Ms. Ramos and Mr. Moffit[t] attended substantial portions of the two-week trial and provided compelling testimony."  (*Id.*)

The Court recognizes that the named class representatives have already been paid a $2,500 incentive payment in connection with the Slocum settlement.  (ECF No. 504 at 7–8.)  Thus, Plaintiffs are effectively asking that each of the named class representatives receive a total award of $17,500 for their participation in this litigation.

After considering the relevant factors, the Court concludes that the full requested incentive awards are excessive under the circumstances of this action.

In light of the fact that Ms. Ramos and Mr. Moffitt were personally in attendance at the trial for extended periods of time, and both of them testified at trial, the Court approves additional incentive awards of $12,500 to be paid to both Ms. Ramos and Mr. Moffit from the class recovery. This amount, in the Court's view, balances the time, effort, and risks that Ms. Ramos and Mr. Moffitt expended in pursuing the litigation and the degree to which the class has benefited from their actions. As for the named class representatives who did not testify at or attend the trial, the Court approves additional incentive awards of $7,500 to be paid to each of Ms. Williamson, Ms. McLeod, Ms. Goodale, Ms. Heyrman, and Ms. Hanson from the class recovery.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Attorney Fees and Costs, and for an Award to the Class Representatives, and Memorandum in Support (ECF No. 478) is GRANTED IN PART and DENIED IN PART to the extent stated in this Order; and

2. Plaintiffs are AWARDED $1,057,282.72 in attorneys' fees and $21,713 in expenses;

3. Lorraine Ramos and Robert Moffitt are AWARDED an incentive award for serving as class representatives in the amount of $12,500 each to be paid from the class recovery; and

4. Constance Williamson, Karen McLeod, Cherlene Goodale, Linda Heyrman, and Delri Hanson are AWARDED an incentive award for serving as class

representatives in the amount of $7,500 each to be paid from the class recovery.

Dated this 7th day of July, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge